VALLEY OIL COMPANY *v.* READY.

Opinion delivered December 3, 1917.

1. ATTORNEY'S FEES—RECEIVERSHIP PROCEEDINGS—AMICABLE AND ADVERSARY PROCEEDINGS—COSTS.—Under the statute, any creditor or stockholder of an insolvent corporation, may institute proceedings to wind up its affairs, and where such proceedings are amicable, that is, not opposed by other stockholders, then, as the one instituting the proceedings does so for the benefit of those similarly situated, they must all share the burden of such proceedings between them in proportion to the benefits received; but where the proceeding, although instituted under the statute, is resisted by other creditors or stockholders, thus causing the proceedings to become of an adversary character, then the rule of apportioning costs according to the benefits received as a result of such proceedings does not apply.

2. ATTORNEY'S FEES—AMICABLE PROCEEDING—APPOINTMENT OF A RECEIVER.—In an amicable proceeding for the appointment of a receiver, the sum of $250 is ample compensation for the labor involved in securing the necessary information and in drawing the petition, and in presenting the application and procuring the order appointing the receiver. In determining what is a proper attorney's fee, this court, on an appeal in chancery, trying the cause *de novo,* may apply to the facts proved, its own general knowledge of the subject matter of inquiry.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; modified and affirmed.

*Bevens & Mundt,* for appellants.

1.   The fees should not have been allowed or taxed against the funds of the oil company.   This was an adversary suit, and the attorneys' fees were not payable out of the fund.   76 Ark. 146; 105 *Id.* 440.

2.   The fee is unreasonable.

*Danaher & Danaher* and *Moore, Vineyard & Satterfield, pro sese.*

1.   The fée was properly allowed by the court against the fund.   76 Ark. 504; 95 *Id.* 389; 105 *Id.* 439.   See also 158 Mass. 434; 90 Fed. 39; 87 *Id.* 810; 105 U. S. 527.

2.   The evidence shows the fee a reasonable one.

### STATEMENT OF FACTS.

The Valley Oil Company was a corporation doing business in this State, having an authorized capital of $83,000, of which E. S. Ready of Helena, Arkansas, held 190 shares of the par value of $19,000.   E. C. Hornor of Helena held a like number of shares, and T. H. Faulkner and S. S. Faulkner held forty shares each.   The oil company had executed its notes for an indebtedness of $28,500 on which notes Ready, with others, was endorser.

Ready employed the law firms of Danaher & Danaher and Moore, Vineyard & Satterfield to institute proceedings for the appointment of a receiver for the oil company, which was done, and in the petition asking for a receiver it was alleged and facts were set forth to show that the oil company was insolvent, and that a receiver should be appointed to take charge of and administer its assets, and, among other things, the petition prayed that pending a final hearing of the cause the receiver, or commissioner specially appointed for that purpose, be directed to sell the assets of the corporation, and that upon a final hearing the costs of the proceeding be paid out of the funds coming into the hands of the receiver from the sale of the assets, and that a reasonable fee be allowed the attorneys for the plaintiff (petitioner), and also the attorneys for the receiver, to be paid out of any funds remaining after the payment of the other fees and costs incident to the

receivership. A receiver was appointed. The attorneys for the petitioner advised with him before they filed his petition, and also with the employees of the company, and examined the books of the company to obtain information to enable them to prepare the petition asking for the appointment of a receiver, and after the receiver was appointed they prepared his oath of office and bond and assisted him in qualifying, advised him daily as to his duties as such receiver, and prepared his several reports. They appeared before the chancellor and asked for an order of sale to sell the property, which was resisted as to the time of the sale and terms on which the sale was to be made, and as to the person who should make the same.

E. C. Hornor, through his attorney, asked the appointment of another receiver. The controversy thus raised was settled by the appointment of a commissioner to make the sale.

The attorneys employed by the petitioner prepared the order of the court in regard to the sale and advised the commissioner in regard to making the sale, and prepared notices to the creditors to file their claims, and the order of the court requiring claims to be filed. Among other claims presented was that of the New South Oil Mill. E. C. Hornor, T. H. Faulkner and S. S. Faulkner, through attorneys specially employed by them, appeared and resisted the allowance of its claim, alleging that the New South Oil Mill was a company in which the petitioner, E. S. Ready, was interested. In that controversy the petitioner, Ready, was represented by Bridges & Wooldridge.

The property was sold for $60,000, 25 per cent. to be paid in cash and the remainder in installments, on a credit of three, six and nine months after the date of sale.

Danaher & Danaher and Moore, Vineyard & Satterfield presented a claim in which they set forth that the Valley Oil Company, the insolvent corporation, was indebted to them for services rendered as attorneys in the sum of $2,500. E. C. Hornor, T. H. Faulkner and S. S. Faulkner resisted the allowance of this claim, and in their

remonstrance they denied that the Valley Oil Company was indebted to the attorneys on their claim for services in any sum, and denied that the services rendered were worth the amount claimed; and they set forth that the petition for the appointment of a receiver was not filed at the instance and request of all of the stockholders of the oil company, but was alone at the request of the petitioner, E. S. Ready, and for the protection of his own interests.

W. T. Wooldridge testified that he had been engaged in the active practice of law at Pine Bluff, Arkansas, since January 1, 1891, and that in his opinion $2,500 would be a reasonable fee for the services rendered by the claimants.

Under the facts above stated, the court rendered a decree allowing the attorneys the sum of $2,500, and directing the receiver to pay same, which decree is challenged by this appeal.

WOOD, J., (after stating the facts). In *Bradshaw* v. *Bank of Little Rock,* 76 Ark. 501, 504, we held: "When many persons have a common interest in a fund, and one of them, for the benefit of all, brings a suit for its preservation, and retains counsel at his own cost, a court of equity will order a reasonable amount to be paid to him out of the funds in the hands of the receiver in reimbursement of his outlay." Citing cases. See, also, *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389.

(1) Our statute authorizes any creditor or stockholder of any insolvent corporation to institute proceedings in the chancery court for the winding up of the affairs of such corporation, and when proceedings are instituted by a creditor or stockholder under this statute, which proceedings are of an amicable character, that is, not opposed by other stockholders and creditors, then as the one instituting the proceedings does so for the benefit of those similarly situated it is but just and equitable that they should share the burden of the costs incident to such proceedings between them in proportion to the bene-

fits received, and a court of equity in such proceedings, should so adjust it. But where the proceedings, although instituted under the statute, are resisted by the other creditors or stockholders, thus causing the proceedings to become of an adversary character, then the rule of apportioning costs according to the benefits received as a result of such proceedings does not apply.

In speaking to this subject, in *Gardner* v. *McAuley,* 105 Ark. 439, we used the following language: "In *Cowling* v. *Nelson, supra* (76 Ark. 146), we said: 'The utmost that can be said of the attorney's fees are that they were part of the costs; and as to whether the court has, in amicable suits, any right to tax them as costs is a question that the courts are divided upon, but all agree that in adversary proceedings they can not be so taxed.' Upon consideration of that question it now appears to us that the weight of authority is against the taxation of attorney's fees, even in amicable partition suits, unless the partition resulted solely from the services of the solicitors for one of the parties, and such services were accepted by the other parties. In adversary suits there is no ground for taxing the fees of the solicitor of one of the parties against the other parties, and the doctrine of allowance of attorney's fees in amicable suits of this character should, we think, be limited to those cases where the services of the plaintiff's solicitor not only result in benefit to the whole subject matter of the litigation, but are accepted and acquiesced in by the other parties. The rule does not apply where all of the parties appear by their respective solicitors and the proceedings are conducted through their joint efforts."

Applying the above principles to the facts of this record, our conclusion is that the proceedings instituted by E. S. Ready for the appointment of a receiver for the Valley Oil Company should be treated as friendly down to the time when the application was made for an order to sell the property. Then, for the first time, the appellants appeared and resisted the course which the receiver was proposing to take, and from that time on, it appears to us,

that all that was done should be treated as adversary, for it is manifest that the appellants thereafter objected to the receiver himself, and asked that another be appointed, and resisted the allowance of claims by the receiver that were filed by the New South Oil Company, claiming that E. S. Ready (petitioner) was interested in that company, and that the allowance of these claims would not be for their benefit, nor for the benefit of the stockholders generally, but that the allowance of such claims would inure solely to the personal benefit of E. S. Ready. The record warrants the conclusion that appellants, from the time they appeared and resisted the order of sale, were treating the receiver and the acts done by him as hostile to their interests, and as promoting the interests of E. S. Ready, not in his relation as a stockholder, but as furthering his private and individual interests, aside from such relation and in detriment to the interests of the appellants and other stockholders.

(2)    The services appellees rendered incident to having the receiver appointed, and down to the time when the order of sale was asked for, when the proceedings became adversary, were reasonably worth the sum of $250. It occurs to us that in an amicable proceeding for the appointment of a receiver the sum of $250 would be ample compensation for the labor involved in securing the necessary information and in drawing the petition and in presenting the application and procuring the order appointing the receiver.

Of course, after the proceedings became adversary, on account of the large amounts involved and the complicated issues raised, if this were a suit against Ready on *quantum meruit* for services, the measure of compensation would have to be commensurate with the labor and talents employed and required for the conduct of litigation of such magnitude. As to what would be proper remuneration in such case we do not determine here, for that issue is not before us. We are convinced that the attorney who testified as to the value of the services rendered, and the court in fixing the amount of compensation

to the attorneys, based their estimates upon the value of the entire services that were rendered in the proceedings, which, as we have seen, is not the proper measure of compensation to be allowed the attorneys and to be taxed as costs, and paid out of the funds of the insolvent corporation in the hands of the receiver.

The character of the services rendered by the attorneys in connection with what was required to procure an order of a chancery court for the appointment of a receiver as in amicable proceedings appears to have been fully developed. This court, trying the cause *de novo*, may apply to the facts proved its own general knowledge of the subject matter of inquiry in determining the value of the services that were rendered by the attorneys. See *Lilly* v. *Robinson Mercantile Co.*, 106 Ark. 571, and cases there cited.

Therefore, the decree of the chancellor will be modified by reducing the decree in favor of the attorneys to the sum of $250, and the decree as thus modified will be affirmed.