MARLIN *v.* MARSH & MARSH.

4-3607

Opinion delivered November 26, 1934.

*Graham Moore*, for appellant.

*McNalley & Sellers*, for appellees.

BUTLER, J. Appeal from allowance by the chancery court of attorney's fees in the sum of $5,000, to be taxed as costs in case of *El Dorado Building & Loan Ass'n* v.

*Union Savings Building & Loan Ass'n, ante* p. 858, and payable out of funds in the hands of the receiver.

Reference is made to our opinion in the above case, filed October 29, 1934, for an understanding of the issues there involved.

The appellees, Marsh & Marsh, were employed by Mrs. Lilla McGraw and later by several other persons, all of whom were investment stockholders in the El Dorado Association, to bring the action resulting in the decree which was affirmed by this court in the case *supra*. The suit was brought for the benefit of all the investment stockholders. The motion for the allowance of the attorney's fee was resisted by certain of the investment stockholders, and testimony was taken relative to the character and extent of the services performed by the attorneys and the reasonableness of the fee suggested by them, which was $10,000. The testimony as to the amount of fee properly to be charged varied from fifteen hundred to ten thousand dollars.

It is the contention of the protesting stockholders that they were represented by their own counsel; that no necessity existed for the institution of a lawsuit, and no benefit to the investment stockholders resulted therefrom. In developing the first contention, there was testimony tending to establish the fact that certain of the investment stockholders had employed attorneys to represent them, and there is some testimony to the effect that one attorney took some part in the preparation of the case for submission. The other attorney employed admitted that he took no part in the proceedings, and that in his judgment there was no necessity for bringing the suit. There is a conflict in the testimony as to just what action, if any, was taken by attorneys other than the appellees. There is testimony to the effect that appellees were not advised of the employment of other attorneys, and that there were no steps taken by any one except the appellees in the preparation and conduct of the action.

No one is more intimately acquainted with the proceedings, the character of services performed, and the attorneys who took part in the litigation, than the chan-

cellor who tried the case, and during the course of the investigation relating to the propriety of the allowance of an attorneys' fee he had occasion to, and did, express his opinion regarding the conduct of the attorneys said to have been employed by the protesting stockholders. He said this: ''The attorneys have stood idly by in the courtroom, and have not joined in the fight. They accept the fruits of his labors (referring to appellees) knowing the law as to implied contracts.'' Again he said: ''During all this time, at any time during the prosecution of this case you could have taken it away from Judge Marsh, and could have asked the court to fix the fee up to that time. If you, who are representing a majority of the stockholders, have found no fault with what Judge Marsh has done in the case, we will pay him for what he has done, and you can go forward from here on with your own clients. The court would have so held at all times during this case.''

We, ourselves, are acquainted with the record in the case out of which the instant proceeding arises, and it is our conclusion that, taken as a whole, it corroborates the testimony of witnesses for the appellees to the effect that they, and they alone, were the attorneys appearing and engaged in the conduct of the cause, and that the protesting stockholders acquiesced in this. We conclude that the finding of the chancellor in this regard is supported by a preponderance of the testimony.

In support of their contention that no necessity existed for the institution of the suit, the attorneys for appellants argue that the Union Savings Building & Loan Association was ready to concede the invalidity of its contract with the El Dorado Association, and to surrender the assets it had received from said association. Counsel also say that the guaranty stockholders were ready and willing to disgorge the assets they had unjustly received, and that therefore the result of the lawsuit was no more than could have been obtained without it. In answering this contention, it may be said that now, as of old, ''actions speak louder than words,'' and the facts are that the Union Savings Building & Loan Association, and the guaranty stockholders contested

the action through every step until the case was finally decided against them on appeal to this court.

It is suggested in the argument that the suit was not amicable in that it was an adversary proceeding between the plaintiffs, investment stockholders and defendants, guaranty stockholders. This is true, but the class for whom the suit was brought was the investment stockholders, and as to them the suit was amicable.

From a consideration of the conclusions reached by the trial court based on the facts above stated, the appellees are clearly entitled to a fee on the authority of the cases cited by appellants, properly allowable as costs to be paid from funds in the hands of the receiver. The cases relied on are: *Bradshaw & Helm* v. *Bank of Little Rock,* 76 Ark. 501, 89 S. W. 316; *Gardner* v. *McAuley,* 105 Ark. 439, 151 S. W. 997; *Valley Oil Co.* v. *Ready,* 131 Ark. 531, 199 S. W. 915.

In the first named case the general principle governing the question of the allowance of an attorney's fee to be paid out of the fund is thus stated: "When many persons have a common interest in a fund, and one of them for the benefit of all brings a suit for its preservation, and retains counsel at his own cost, a court of equity will order a reasonable amount to be paid to him out of the funds in the hands of the receiver in reimbursement of his outlay."

As to the excessiveness of the fee allowed counsel for the appellants question the fact that a fund for the benefit of the investment stockholders was obtained as fruits of the litigation, on the theory that the defendants in the original case were willing to concede all the contentions of the plaintiffs. We have already disposed of that question. They also question the value of the assets recovered. An examination of the opinion filed October 29, 1934, discloses that a substantial benefit has resulted from the litigation. The investment stockholders recovered assets of the face value of $125,000 from the guaranty stockholders, and a judgment for more than $6,000 against an individual, as well as having the contract between the two Building & Loan Associations

avoided, the assets to be administered by a receiver of their own choice.

It is suggested that the fee should be limited to an amount which would be reasonably chargeable against the stockholders who employed the appellees, and that this, under the contract between them, would be a little more than $1,000. For authority for this contention, we are referred to statements made by the court in the above cases and particularly to the case of *Gardner* v. *McAuley, supra.* That case was a suit where lands were partitioned according to the respective interests of the tenants in common as found by the court. This was not an amicable proceeding, but an adversary suit, and for that reason the court found that no attorney's fee should be allowed. In explaining the effect of the decision, the court said: "We are not to be understood as holding that, where one or more tenants in common brings suit against the other tenants in common for partition, and there is no appearance or resistance, the proceedings resulting in an amicable partition of the property, the fees of the plaintiff's solicitors should not be taxed against all the parties. That question does not arise in this case under the facts as before related. But, even in that sort of a case, if the fees are taxable, they can only amount to such sum as the solicitor can appropriately charge his own client, and not the fee he might have charged if employed by all of them. *Bradshaw* v. *Bank of Little Rock,* 76 Ark. 501, 89 S. W. 316. 'The object of the allowance,' said this court in the above cited case, 'is not to give the attorneys a larger fee than they might have recovered from their own clients but to shift the burden of the charge from them, and place it upon the creditors of the bank generally. The inquiry then is, what would have been a reasonable charge against their own clients for the services performed?' "

In *Bradshaw* v. *Bank of Little Rock, supra,* the attorney brought suit for the benefit of his own client, but it was one for the benefit of all creditors of the bank and prosecuted with their acquiescence. For that reason the court held that the attorney was entitled to have his fee paid out of the assets in the hands of the receiver. The

court further found that no fund had been created, recovered, or preserved, and that therefore the amount of the fee should be limited to a sum reasonably to be charged against the attorney's own client for the services performed, remanding the case to the court below to ascertain that amount.

The general rule stated in *Bradshaw* v. *Bank,* the application of which to the facts in that case constrained the court to hold that an attorney's fee was properly allowable to be paid out of the fund, is not operative except where the services rendered have inured to the benefit of all the creditors; nor is it operative where each of the creditors is represented by a different attorney working independently for a common purpose. 14 C. J., § 3151, "Corporations." In the Bradshaw case, in discussing what would be considered in fixing the amount of attorney's fee, the court said: "If their services had resulted in securing or producing a fund for the benefit of the creditors, then the amount of this fund might well be the main element to be considered in fixing the amount of such fee; but no such fund was produced here."

It is to be observed that in the judgment of the chancellor no conditions existed to render the principle inoperative, and that there was a fund recovered and preserved by means of the suit which inured to the benefit of all the parties in the class of plaintiffs. Therefore the limitation of the fee to an amount properly chargeable against the appellees' own clients, as held in the cases cited, is not applicable. The inquiry then is, what would be a proper fee to be chargeable against the fund which had been recovered and preserved? In considering this question, the amount of such fund is important, and it was upon this theory that the witnesses for appellees based their judgment as to a reasonable fee, as did also the court in reaching its conclusion, taking into consideration the ability of counsel for the appellees, the nature and extent of the services rendered and the result obtained.

In questioning the judgment of the trial court, counsel for appellants refer to the amount allowed by this court as a reasonable attorney's fee in the case of

*Valley Oil Co.* v. *Ready, supra.* In that case no fund was recovered, and the case was amicable only in its initial stages. The fee was allowed for attorney's services only during the period in which the proceedings were amicable, and was fixed at a sum which the court found to be reasonable for such services. In the instant case, however, it will be seen that an entirely different state of facts exist from those in that case, and we are of the opinion that, taking all these facts into consideration, the judgment of the chancellor should not be disturbed.

We therefore affirm the decree.