Martin MILLER, on behalf of himself and all others similarly situated, Plaintiff,

v.

MACKEY INTERNATIONAL, INC., et al., Defendants.

No. 70–740–Civ–NCR.

United States District Court, S. D. Florida, Miami Division.

Feb. 18, 1976.

**534**

Palmer & Lazar, Miami, Fla., Rabin & Silverman, New York City, for plaintiff.

Gunn & Venny, Miami, Fla., for defendant.

Eugene L. Heinrich, McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, Fla., guardian ad litem.

## MEMORANDUM OPINION

ROETTGER, District Judge.

The problem of attorney's fees in class actions seems to consume more discussion time among district judges at various seminars than any other topic—unless it is the subject of sentencing.[1]  Although the question of a proper fee in the instant case has required much time of all concerned, the issue needs to be reviewed in detail.

### HISTORY OF THE CASE

Suit was filed in 1970[2] alleging a securities violation on the part of defendant Mackey International Airlines, a certificated air carrier between Florida and numerous points in the Bahamas.  The class members claim there were material omissions in the prospectus for the stock offering among others, the failure to disclose a competitor, viz. Chalk's Flying Service flying between Miami and Bimini and other Bahamian points, and the fact that proposed real estate development on Bimini was hampered by inadequate electrical power.

The case was set for trial in June, 1973 and the parties negotiated a settlement after the first day of trial.  The settlement provided for the payment by defendant of $50,000 in cash over a 12-month period and the issuance of 250,000 shares of Mackey International's common stock to members of the class.

In November, 1973, the plaintiff's counsel filed for attorney's fees seeking one-third of the total settlement, which they estimated to be $425,000.  This figure was reached by valuing the 250,000 shares at 1½ plus the cash fund of $50,000.

After notice the settlement was approved with the court reserving jurisdiction to determine attorney's fees.  Counsel for plaintiff waived a hearing on the matter of attorney's fees and the court, after a lengthy review of the file, rejected the claim by plaintiff's counsel that they had expended 1925 hours in representation of the class and entered an award of $20,500 in

---

1. The matter has reached proportions requiring the Federal Judicial Center to commission a survey on the problems presented.  At several meetings of the United States District Judges in the past year this Judge has heard one "horror story" after another about claims for fees by counsel for the class.  This case does not come within that classification.

2. Suit was filed in the Southern District of New York, transferred to the Southern District of Florida, and presided over by two judges prior to transfer to the undersigned judge in 1972.

April, 1974. Counsel for plaintiff appealed this order to the Fifth Circuit which remanded for a hearing on the issue of attorney's fees. *Miller v. Mackey International, Inc.,* 515 F.2d 241 (5th Cir. 1975).

█ After mandate in July, 1975, a preliminary hearing was held to determine procedures to be followed, particularly in view of the concurring opinion of Judge Bell. Because the interest of the class members is specifically adverse to the interest of their lawyers who seek an attorney's fee to be awarded from the settlement fund, the class members must be protected. The attorney for the defendant has little concern for the manner in which the fund is divided. Consequently, the court appointed an experienced attorney as a guardian ad litem for the members of the class. Although this was not specifically recommended by Judge Bell, this procedure both achieves protection for the members of the class and enables the trial judge to remain in an impartial position. Counsel for the class strenuously objected to the appointment of a guardian ad litem and asserted that the court should conduct cross examination of the witnesses testifying for plaintiff's counsel. However, that contravenes the court's traditional role, tending to cast the court into an advocate's role. Cf. *Reserve Mining Co. v. Hon. Miles W. Lord,* 529 F.2d 181 (8th Cir. 1976). Although specific authority for the appointment of a guardian ad litem is not provided for in Rule 23, it is inherent within Rule 23(d).

█ In addition the court, under its equity powers, possesses the duty to ensure that justice is done. Another District Court has warned with regard to a fee application of possible

". . . prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation."

*Cherner v. Transitron Electronic Corp.,* 221 F.Supp. 55, 61 (D.Mass.1963). See also *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973). The appointment of a guardian ad litem is appropriate where there is litigation between a guardian and ward—herein, the attorneys for the class and the class. See section 744.318, Fla.Stat. Since the guardian ad litem is charged with the protection of the fund for the class, his fee may be charged against that fund. See *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885).

In the original application for an order for attorney's fees counsel for the class sought to have the court pay them the entire cash fund of $50,000 plus 63,738 shares of Mackey's common stock which, at 1½ per share, would award them a fee of $141,166. This would equal one-third of the settlement fund of $425,000. In support of its original application the counsel filed an affidavit showing a total time expenditure of 1925 hours.

At the hearing the guardian ad litem introduced evidence that the value of Mackey International common stock on the day before the hearing was a bid of ⅝ with an asking price of ¾. Consequently, the market decline has reduced the fund to $50,000 cash plus stock valued at $93,750. If the court were to award the requested fee of $141,166 plus costs in excess of $3,000, this would more than consume the entire fund leaving nothing for the members of the class.

Both counsel for the class and the guardian ad litem interpret the Fifth Circuit decision as indicating that a contingency award should be a principal consideration of the court, absent findings at the hearing which would dictate otherwise.

(1) *Contingent nature of the services*: There was no explicit agreement between the counsel for the class and the members of the class with regard to fees to be paid to the attorneys. Mr. Rabin, New York Counsel, had been counsel for a class in two prior class actions and testified specifically to the amount of each fee award, the hours claimed and the amount of the settlement. In each instance, the judge, after settlement of the class action cases, accepted the hourly totals claimed by the counsel and

awarded 15.9% and 15% of the respective settlement funds as a fee. Mr. Lazar, Miami counsel for the class, had never handled a class action prior to this one.

Counsel for the class continued to contend that they should receive all of the cash fund plus shares of stock for the balance of their fee or, alternatively, that a higher percentage of the cash fund be awarded to them than the percentage applied to the shares of stock. The guardian ad litem vigorously contests this proposal and asserts that if a fee is to be contingent, it must be contingent as to all aspects of the award. See *Johnston v. Cox*, 114 Fla. 243, 154 So. 206 (1934); cf. *610 Lincoln Road, Inc. v. Kelner, P.A.*, 289 So.2d 12 (Fla.App.1974). See .also *Pollard v. United States*, 69 F.R.D. 646 (Civ. Action 4126–N, M.D.Ala. Jan. 23, 1976) (award based upon a percentage of the "total recovery" to the clients.)

(2) *The hours expended by counsel for the class*: The original fee application claimed the expenditure of 1925 hours by counsel for the class. Mr. Rabin has reduced his figure from 1025 to 945 hours and Mr. Lazar has computed his time expended at 900 hours.[3]

If we take the figure of 1845 hours and assume a 7-hour workday—from 9 A.M. to 5 P.M. with one hour for lunch and absolutely no interruptions, which is implausible in itself—for an attorney working solely on one case, this would completely consume more than 263 working days. If a lawyer worked only 50 weeks of the year on a 5-day basis, this means that this case would have required the *uninterrupted*

services of one lawyer for nearly 13 months. The period of time would easily exceed 13 months, if we allow for interruptions in the working days, or for holidays, or for a vacation longer than two weeks, or for illness, or for any of the other numerous matters which undoubtedly occur. The assertion that a total of 1845 hours was required to represent the class ably in this case lacks credulity.[4]

A closer examination of the actual time claimed by the two law firms which represented the class elicits the following major items worthy of comment. Mr. Rabin lists the following totals for various services: 84¼ hours for amendment of complaint; 208½ hours for the trial; 129¾ hours for the settlement; 190½ hours for the work on the interlocutory appeal. Mr. Lazar claimed 90 hours for work on the interlocutory appeal; 130 hours for the taking of depositions; 160 hours for the preparation of the trial. He credited his partner who also attended hearings and the trial with 125 hours.

Certain items from the testimony deserve further examination. The interlocutory appeal was taken from a denial of class action status[5] which occurred very early in the proceedings and required no review of a trial record. Despite this the lawyers claim an expenditure of over 280 hours; unquestionably, the result obtained in the Fifth Circuit was a beneficial one to members of the class and is a significant decision in the law on class actions. Be that as it may, the claim by counsel that over 280 hours were required to review a record containing no

---

3. It is indeed curious that the hours arrived at would produce a fee very similar to the one-third figure sought, if the hours are multiplied by an hourly rate of $75.

4. A careful examination of the court file buttresses the court's conclusion as to the hours necessarily expended for this litigation. Although the duration of the case spanned 3½ years prior to the court's first order on attorney's ·fees there are long periods of time in which nothing happened. For example, nothing transpired between the time of oral argument on the interlocutory appeal and the opinion of November 23, 1971; the interval between the time of the decision of the Fifth

Circuit in November, 1971 and the transfer to the undersigned judge in June, 1972 dealt with the filing of an undertaking for costs and an amended complaint; the only pleadings of substance filed after June, 1972 before the notice of pretrial in February, 1973 were two answers to the amended complaint and the notices to the class; (no discovery was taken during this period); in the period leading up to the pretrial conference and trial in June, 1973 there was the usual last-minute flurry of interrogatories and depositions.

5. *Miller v. Mackey International, Inc.*, 452 F.2d 424 (5th Cir. 1971).

trial transcript, and to brief [6] and argue an interlocutory matter again defies credulity. Only in the rarest of instances does an appellate counsel [7] have the luxury of nearly two uninterrupted months of time (280 plus hours) to spend on an appellate matter.

The court also discounts the time claimed for taking depositions [8] and the total hours for preparation for trial and trial of 500 hours plus are similarly unfounded.

■ Two other minor matters regarding time expended deserve some attention. Mr. Lazar testified that 15 hours were expended in getting the notices printed and 15 hours were expended in getting the addresses of the stockholders. There was no testimony that paralegals were used to handle the routine matters of class action litigation. Much of the necessary paper handling in a class action, particularly one involving a class of stockholders, should be handled by paralegals rather than attorneys; the fee should likewise reflect judicious use was made of paralegal or clerical assistance.

■ Mr. Lazar, who did not keep time records, also testified that he spent 35 hours of his total in preparing his application for attorney's fees. Little time is required to prepare a fee petition and ordinarily the court would not credit attorneys for the time and expense of seeking an award. However, in cases where the right to attorney's fees arises under the equitable fund doctrine, see *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882); *Central R. R. v. Pettus*, supra, the court must necessarily be presented with the information necessary to justify an award and to determine the fee. In such cases, a reasonable time period must be allowed counsel to prepare their application. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 382 F.Supp. 999, 1012 (E.D.Pa. 1974). But nothing in this file would justify the expenditure of a whole week of lawyer's time in preparing an application for attorney's fees.

The court could not accept the assertion of counsel as to time expended from a review of the files; after an evidentiary hearing the court concludes its prior finding as to hours expended to be inflated.

The guardian ad litem introduced evidence that the attorney for defendant Mackey International expended 250 hours in all aspects of his defense of the case. Although the burden is heavier on the counsel for the class, the time expended by Mackey's lawyer is far closer to the mark of the hours required for able representation of the class.[9]

■ (3) *Duplication of efforts*: Although bearing on the question of the time to be credited, duplication is also an independent factor to be considered in the award of attorney's fees.[10] At the trial Mr. Rabin was present from New York; Mr.

---

6. This court has obtained and read appellant's nineteen-page brief; nothing contained in it would warrant the hours claimed.

7. The court handled some 200 appellate cases in approximately ten years prior to going on the bench and has some experience and background in making this finding.

8. A total of 137 hours were claimed for the taking of 16 depositions, of which 40 hours were consumed in one week in New York during which 5 depositions were taken; excluding formal parts, those depositions comprised 28, 11½, 9½, 10½ and 7 pages respectively, and the court takes notice that the range of pages per hour of testimony is 40 to 60. Also included in the total time figure were 3 depositions which were taken in contravention of the court's order regarding termination of discovery.

9. Within three weeks of this hearing on attorney's fees the court considered attorney's fees in three consolidated cases where competent admiralty counsel had engaged in a hard-fought trial consuming five full days in court. That trial involved many novel questions of law and required the taking of more depositions and travel time; yet the figures for time expended by experienced counsel did not appreciably exceed the figure of counsel for the defendant in this case.

10. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The other factors in *Johnson* have been considered but reference to them seriatim is not required for this determination of fees.

Lazar acted as chief trial counsel and his partner also attended the trial. In addition, both the New York law firm and the Miami law firm prepared proposed jury instructions. Pleadings were reviewed not only by Mr. Lazar in Miami but also by his partner; in New York the same pleadings were being reviewed not only by Mr. Rabin but also by his partner. Mr. Lazar admitted that there was "no question there was a great amount of parallel work". The court finds there was not only a duplication of effort in many instances but there was also triplication of effort at the trial and quadruplication of effort on the review of pleadings.

Further, not only in the duplication of time but also in consideration of costs one must query why it was necessary for Mr. Lazar to go to New York to take depositions—particularly in view of their extreme brevity [11]—and for Mr. Rabin to come to Miami for the trial.

There are differing degrees of contingency of recovery: the likelihood of recovery in this case, in view of the material misrepresentations contained in the prospectus for the stock offering, was rather high. That situation and the fact that neither counsel testified to having received more than 15.9% for a court awarded fee in other class actions would cause the court to reject the figure of one-third sought by plaintiff's counsel as a fee.[12]

The court notices that plaintiff's counsel's own testimony indicates a range of previous awards from 15 to 15.9%. In a recent case from the middle district of Alabama involving a class action against the government for medical experimentation involving syphilis, conducted upon inmates, Judge Johnson in an excellent opinion awarded 12.5% of the total recovery as attorney's fees under 28 U.S.C. § 2678. *Pollard v. United States*, supra.

■ The court, after considering the success of the interlocutory appeal and the lack of credibility for the hours claimed by counsel and also the resultant delay to the members of the class, concludes that a reasonable attorney's fee in this case should be set at 15% of the actual recovery. The court is persuaded of the soundness of the guardian ad litem's position that the percentage of recovery for a contingent fee should be applied across the board. Counsel for the class shall receive that percentage out of the cash fund of $50,000 and that percentage out of the 250,000 shares of Mackey International stock. The fact that this stock had declined in the market since the time of the settlement has no bearing on the percentage to be awarded because the court cannot speculate whether plaintiff's counsel would have disposed of their shares of stock immediately or would have held them until now, hoping for appreciation or to avoid block sales.

■ *Costs*: Mr. Rabin candidly agreed that his expenditures since the time of the trial should not be counted as they were expended in seeking a higher fee award. The balance of the amount claimed by counsel, $3,911.40, are costs to be recovered from the cash fund prior to distribution of attorney fees or to the class members.

*Attorney's fee considerations*: This matter has taken far too long for resolution. The purpose of Rule 23 has been thwarted because of the delay. The delays resulted in part from the slowness of counsel, from continuances, and from the fact that both the appellate and trial court decisions have not been rendered speedily.

■ For the benefit of the members of the bar in this district, hindsight has produced a number of observations on how the determination of attorney's fees should be and probably will be handled by this court in the future: (1) Paralegals should be employed for clerical and administrative matters in a class action, particularly one involving large numbers of stockholders. (2)

11. See note 8, supra.

12. The court does not intimate that a one-third contingency fee would always be rejected in class actions. Counsel genuinely felt entitled to that figure in the instant case, probably because of the result of the interlocutory appeal and their estimate of time expended.

Attorneys will be expected to file periodic summaries of the hours claimed by them to have been expended in behalf of the class. (3) When a settlement is reached in a jury trial, the court will probably recess the jury for a few days, appoint a guardian ad litem to represent the members of the class, such guardian likely being the counsel for the defendant unless circumstances of the settlement render that inappropriate, and resolve the issue of fees before the same jury chosen to try the case.

This court is convinced that Rule 23 is designed to provide remedies for abuses in a unique manner, and the restitution to class members of appropriate damages should be zealously guarded by the courts. The attorneys who render this service are entitled to a reasonable attorney's fee and should receive nothing less for their efforts, but Rule 23 does not provide a basis for anything more.