Eddie POWELL, Mayor of the
City of North Little Rock et al
*v.* Frank HENRY et al

79-129                                       592 S.W. 2d 107

Opinion delivered January 14, 1980
(In Banc)

*Jim Hamilton,* for appellants.

*John T. Harmon, Judith A. Rogers* and *Tommy H. Russell,* by: *John T. Harmon,* for appellees.

JOHN A. FOGLEMAN, Chief Justice. On December 30, 1976, the Chancery Court of Pulaski County entered a decree in an action brought by Frank Henry and others against the mayor and aldermen of North Little Rock and the manager of the North Little Rock Electric Department, holding that the city improperly charged their electrical customers $639,226.24 and ordering a refund, on a pro rata basis. The court denied a request for allowance of attorney's fees to the attorneys representing the customers in the litigation which resulted in the decree. On February 25, 1977, the plaintiffs in the action filed a motion for clarification, stating that the court had misinterpreted their prayer for payment of attorneys' fees as a prayer for judgment against the defendants for those fees, in addition to the amount of the overcharge, when they had actually requested that these fees be paid from the refunds made to the customers. On March 9, 1977, the chancery court modified its previous decree to require the city to bear all costs of the refund and pay interest on any refunds due but unpaid after April 30, 1977, and retained jurisdiction on the question of allowance of attorneys' fees to plaintiffs' attorneys. On April 1, 1977, the chancery court presided over by a chancellor on assignment, ordered the payment of $95,884.31 as attorneys' fees to John Harmon, Tommy H. Russell and Judith Rogers, who had represented the customers in the litigation. On May 4, 1977, the chancery court, with the regular chancellor presiding, set aside this order, but reinstated it on December 27, 1978, after a rehearing on the matter. Appellants appeal from this last order or decree, asserting the following points for reversal:

I

PLAINTIFFS' ATTORNEYS MAY NOT

RECOVER ATTORNEYS' FEES IN *QUANTUM MERUIT,* BUT MUST RECOVER ON THEIR CONTRACT WITH PLAINTIFFS.

## II

ACT 822 of 1977 (CODIFIED AS ARK. STATS. ANNO. § 84-4601) IS NOT APPLICABLE TO THE PRESENT CONTROVERSY.

## III

A REASONABLE AMOUNT OF ATTOR-NEYS' FEES SHOULD NOT EXCEED 5 PER-CENT OF THE TOTAL RECOVERY OF THE TAXPAYERS' ACTION.

We find no reversible error and affirm the decree.

## I

Appellants contend that the attorneys for the plaintiffs in the action were limited to the fee of 25% of the recovery of the original plaintiffs employing them, relying upon *Terral* v. *Poe,* 190 Ark. 346, 79 S.W. 2d 69, insofar as it related to a division of attorney's fees between Terral and Poole. We are unable to see any comparison between that case and this. There Poole, an attorney, accepted employment by Terral as an associate in the trial of two cases for a fee of $100 per cause. When there was a rather large recovery in the two cases, Poole sought to recover $775.62, or 25% of the total fees, on the basis of quantum meruit. We held that Poole was bound by his contract and limited to the fee to which he agreed in the contract. This case might furnish some precedent in a contest between these attorneys and the named rate paying plaintiffs in the litigation. If any of these clients are complaining of the allowance made, it is not reflected by the record. As we understand the record in this case, the action was a class action, which resulted in the recovery of a substantial amount which constituted a common fund. The allowance of attorneys' fees from a common fund established or augmented through the efforts of the attorneys to whom

the fee is allowed is a well recognized practice and is proper. *Bradshaw* v. *Bank of Little Rock,* 76 Ark. 501, 89 S.W. 316; *Valley Oil Co.* v. *Ready,* 131 Ark. 531, 199 S.W. 915; *Marlin* v. *Marsh,* 189 Ark. 1157, 76 S.W. 2d 965.

We do not consider that our holding in *City of Ft. Smith* v. *Southwestern Bell Telephone Co.,* 220 Ark. 70, 247 S.W. 2d 474, is applicable here, or that it is contrary to the holding in the cases just cited. There nine cities sought to have the fees of their attorneys paid for a proceeding in which they successfully protested a telephone rate increase and refunds to subscribers were ordered. The basis of that decision was that these attorneys were representing the cities, not the rate payers. Here the situation is quite different. The attorneys were representing the rate payers in litigation against the city.

In arguing this point, appellants complain that it is extremely difficult for the court to determine the value of the service of these attorneys, in view of the fact that they did not keep time records and only provided subjective and self-serving estimates as to the time spent on the case. Appellants then assert that the burden of providing accurate and ascertainable records of time spent on behalf of the plaintiffs should be on these attorneys. This argument, which is only stated, without citation of authority, is not convincing and might well be disposed of under the rule of *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606. It would have been desirable to have had time records, if they were kept, but there is not now, and never has been, any rule of law or procedure in this state that requires submission of time records in support of a request for payment of attorneys' fees. While the time spent is an important element to be considered in determining the reasonable value of an attorney's services, it is not the controlling factor and is sometimes a minor one. *Love* v. *U.S. F. & G. Co.,* 263 Ark. 925, 568 S.W. 2d 746. We have recently had occasion to address our attention to the relationship of time records and the expenditure of time in relation to the allowance of attorney's fees in *Lytle* v. *Lytle,* 266 Ark. 124, 583 S.W. 2d 1 (1979). There we found that other factors were just as important as the time devoted to a case. In *Marlin* v. *Marsh,* supra, we pointed out that the amount of the recov-

ery was important and indicated that the trial court properly took into consideration the ability of counsel, the nature and extent of the services rendered and the result obtained. The chancellor who made the allowance here, and whose action was reinstated by the regular chancellor, took these factors into consideration. Although such allowances should not be entirely on a contingent fee basis, they should be such that competent lawyers would not refuse to accept employment in cases of this sort. *Old Republic Insurance Co.* v. *Alexander,* 245 Ark. 1029, 436 S.W. 2d 829. Naturally, the uncertainty of ultimate recovery is an element to be considered in accomplishing this purpose. We do not consider that the allowance of 15% of the recovery put the allowance on a contingent fee basis. It was an appropriate means of distributing the burden.

## II

We agree with appellants and appellees that Act 822 of 1977, which was passed, and became effective, after the entry of the original decree in this case, is inapplicable. Furthermore, we do not understand the decree to be based upon the act.

## III

Appellants again emphasize the failure of the attorneys to keep detailed time records. They point out that according to their testimony, Harmon estimated that he spent 25 hours per week, Russell estimated 12 hours per week, and Rogers estimated an average of 10 hours per week, during the pendency of the cases. Appellants then calculate that multiplying these estimated hours for the period of 16 weeks that the litigation was pending by a factor of $75 per hour, which they say was shown to be reasonable by the attorneys at the hearing, produces a total of $58,800, which is less than two-thirds of the award, but considerably more than the 5% appellants consider reasonable. Although accurate time records would have been helpful in considering the reasonableness of the fee allowance in this case, it is our position that time spent is only one significant factor in such considerations. *Lytle* v. *Lytle,* supra. Other factors in this case are

at least equal in importance, and may perhaps carry considerably greater weight.

Appellants seek to establish a basis for their position that 5% of the refund was a reasonable fee allowance by referring us to cases involving class actions where the fund involved ranged from $137,600 to $7,200,000 and attorneys' fees were not allowed on a percentage basis. By arithmetical calculation they arrive at percentages ranging from 4% to 5% of the funds involved in those cases, as against 15% allowed in this case. Appellants then somehow translate our reduction from $15,000 to $10,000 of the fee allowed in a partition suit (*Cole* v. *Scott,* 264 Ark. 800, 575 S.W. 2d 149) into an expression of this court's intention that 4% to 5% will constitute the outer perimeters of a chancellor's discretion in awarding attorneys' fees from a common fund. We find no language in that opinion indicative of any such intention. As a matter of fact, we are not aware of any recent decision in which this court has passed upon allowances of attorneys' fees where the percentage of the fund or recovery has been given any significance. We have enumerated pertinent factors on several occasions. See, e.g., *Lytle* v. *Lytle,* supra; *Robinson* v. *Champion,* 251 Ark. 817, 475 S.W. 2d 677; *Equitable Life Assurance Society* v. *Rummell,* 257 Ark. 90, 514 S.W. 2d 224.

It seems to us that the assigned chancellor, whose award was reinstated by the regular chancellor, took into consideration many of these factors. He made these findings:

1. There has been a substantial economic benefit bestowed upon the class;
2. There was personal and professional hardship incurred by the attorneys of record;
3. There was a vindication of an economic right;
4. The ligitation was novel;
5. The plaintiffs' case was difficult and there was substantial time devoted to the case;
6. Counsel possessed extraordinary skill and competence.

John Harmon testified about his experience in dealing

with utility rates and with class actions and anti-trust proceedings and his previous practice of public utility law generally. He anticipated a harmful effect upon his practice in North Little Rock because he detected an adverse attitude toward him by members of the city council when he appeared before them in connection with his practice after he became engaged in this litigation. He related the necessity for lengthy discovery processes and the protection of confidential sources of information gained from employees of the electric department, and classified the litigation as complex.

Expert testimony was given by Messrs. Walter Davidson and Dale Price of the Pulaski County Bar Association. Davidson told of his experience in public utility practice over a period of three to four years, and of the scarcity of attorneys engaged in that type of practice, which he called a "specialty-type" item. He considered a rate of $70 per hour in that work as a conservative figure designed to promote a continuing relationship with a client, but felt that a higher fee basis was appropriate in a case such as this, where the establishment of such a relationship was not a factor. In his opinion, considering the results and the fact that collecting any fee was dependent upon a favorable termination of the litigation, 25% of the recovery was reasonable. He considered the complexity of the case, the experience of the attorneys involved, the results accomplished, the urgency of the case, other business lost, the lack of a continuing client relationship and the contingency of the compensation as pertinent factors in fixing the amount of the fee.

Price considered the specialized nature of utility rate cases, the lack of a prospect of a continuing lawyer-client relationship, the urgency of the case, the contingency of the fee and the fact that the suit was against a political entity in arriving at his opinion that a fee of 20 to 25% of the recovery would be reasonable. He expressed the opinion that fees of $75 to $100 per hour, and "even upwards" were a fair hourly rate in the locality, and said that in fixing an hourly rate, the political factor, the potential necessity for discarding other business, and the urgency of the case were important factors in determining whether the hourly rate should be $75, $100, or even more.

In view of the record before us, we are unable to say that there was any abuse of discretion in the allowance of attorneys' fees in this case, which we should have to do in order to reverse or modify that award. An important factor in our consideration of the fee allowance in this case is the realization that inadequate compensation will cause attorneys who are competent to handle this type of litigation to shun it, or if they accept it, fail to devote sufficient time to adequately prepare or present the case. This is an appropriate consideration in matters of this sort. *Old Republic Insurance Co.* v. *Alexander,* 245 Ark. 1029, 436 S.W. 2d 829. The individual rate payer ordinarily cannot afford to employ counsel because attorneys' fees and other expenses could be expected to exceed his prospective recovery. If attorneys do avoid employment such as that accepted by the attorneys in this case because they cannot expect to be adequately compensated, even if they are successful, there would be few cases where excessive charges would ever be refunded. The fact that no one who is the beneficiary of the recovery is complaining about the award is not without significance. The standing of appellants in this matter is not clear, even though the abstract of the record does not reveal that it was ever challenged in the trial court.

The trial court had considerable discretion in making fee allowances. We are unable to say that the fees allowed were indicative of any abuse of the discretion of the chancellors.

The decree is affirmed.

HICKMAN, J., not participating.

Special Justice A. D. McAllister, Jr., concurs in part and dissents in part.

A. D. McALLISTER, JR., Special Justice, concurring in part, dissenting in part. On this second appeal in this case appellants claim that the allowance of attorney's fees in the amount of $95,884.31 to three attorneys whose efforts in a taxpayers' class action had established a common fund of $639,226.24 was improper and excessive. The first appeal is reported in *Henry* v. *Powell,* 262 Ark. 763, 561 S.W. 2d 296

(1978), wherein this court reversed an appeal from the regular chancellor's[1] order setting aside a special chancellor's order (initially allowing the fee) for want of an appealable order. The opinion in *Henry* v. *Powell,* supra, was handed down on February 13, 1978. Thereafter, the regular chancellor reinstated the special chancellor's order approving payment of the fee.

Three attorneys of the Pulaski county bar, representing 12 named plaintiffs (5 of whom subsequently withdrew) on a contingent fee basis of 25% of any amounts recovered, filed a complaint for their clients and "all others similarly situated" for an accounting and refund of all moneys alleged to have been illegally exacted by the electric department of North Little Rock and for recovery of reasonable attorney's fees.

This court has said that the one person in the best position to evaluate and make an award of attorney's fees was the chancellor before whom the entire proceedings were conducted. *Robinson* v. *Champion,* 251 Ark. 817, 475 S.W. 2d 677 (1972). And that no one is more intimately acquainted with the proceedings, the character of the services performed, and the attorneys who took part in the litigation than the chancellor who tried the case. *Marlin* v. *Marsh & Marsh,* 189 Ark. 1157, 76 S.W. 2d 965 (1934).

Even though this court usually defers to the superior perspective of the trial judge for an assessment of the various factors enumerated in the majority opinion in any determination of reasonable attorney's fees, we have not hesitated to reduce an allowance for attorney's fees when, based upon the entire record, we cannot find adequate support for the allowance. *Equitable Life Assurance Society of the United States* v. *Willie Runnell,* 257 Ark. 90, 514 S.W. 2d 224 (1974). Since the chancellor who originally heard this case did not make the allowance of attorney's fees, a review of the entire

---

[1]The regular chancellor was Judge Hickman, not Judge Bullion as reported in *Henry* v. *Powell,* supra. Judge Taylor was the special chancellor assigned by order of the chief justice of this court to hold court for the week of March 28 through April 1, 1977 in the absence of Judge Bullion. Judge Hickman properly disqualified himself in *Henry* v. *Powell,* as well as in this case.

transcript of the trial court is in order.

The original complaint was filed on August 10, 1976 and subsequently amended. No interrogatories, requests for admissions of facts, responses or objections thereto, or discovery depositions are shown in the record. A motion for preliminary hearing, answer, amended answer, a 55 page memorandum and pre-trial brief and motion for summary judgment were filed by the city. An 8-page brief was filed by one of the three attorneys. Although a summons was issued for appearance of the North Little Rock bookkeeper to testify on behalf of the plaintiffs at trial on November 12, 1976, there is no evidence in the record that the hearing was stenographically recorded.

On November 17, 1976, appropriately under the pleadings, the trial court appointed an attorney, Jerry D. Jackson, as a master in chancery "to examine the evidence, hold hearings, investigate the records . . . or do any other acts necessary to determine what the extra charges were . . . and report to the court his findings in dollars and cents . . ." The order instructed the master to study certain specified exhibits among others and authorized the master to hire an accountant if necessary. The master filed his 22 page report on December 28, 1976, and on December 30, 1976 Judge Hickman entered a final order finding that the master's report was "accepted without objections by either party". The order directed the city to refund $639,226.24 to the city's electric customers on a pro-rata basis. The master's fee of $1500.00 for 14.1 hours of work was approved but plaintiff's request for attorney's fees was denied.

As Judge Hickman became a member of this court on January 1, 1977, the remaining proceedings in the trial court were conducted by Judge Bullion, elected to succeed Judge Hickman, and by Judge Taylor, the special chancellor.

In my opinion, the three attorneys should not be allowed a fee for their efforts to obtain or to enforce collection of their own fees. The record of the proceedings before the trial court reveals that the efforts of the master and the court itself may have well exceeded the "in court" efforts of the

three attorneys leading to the establishment of the fund on December 30, 1976. The ''out of court'' efforts of the three attorneys leading to the establishment of the fund is not sufficiently documented.

Since the prayer of plaintiff's compliant was for the recovery of attorney's fees from the city rather than from the common fund it is readily apparent why Judge Hickman concluded that there was no existing statutory authority to assess an attorney's fee against the city.

John Harmon testified that the ''first serious effort'' to recover attorney's fees in excess of 25% of the amount recovered for the 8 named plaintiffs came after March 18, 1977, the effective date of Act 822 of 1977 which authorized fees for the attorneys of record in taxpayer refund actions for monies illegally exacted by a county, city or town before distribution of the balance to the members of the class.

The order establishing the common fund is shown at pages 157-8 of the 395 page transcript. The remaining 237 pages reflect principally and almost exclusively the efforts of the three attorneys to obtain and enforce collection of their fees by execution and garnishment. These efforts include the two appeals to this court and the actions taken by a special master and the city to comply with Judge Bullion's order entered March 9, 1977 which found that the city had withdrawn its previously filed petition for rehearing and review of Judge Hickman's order of December 30, 1976 and appointed Price, Waterhouse & Co., certified public accountants, to calculate and oversee the refunds to the electric customers. By this order the court retained jurisdiction ''for clarification pertaining to attorney's fees due plaintiffs out of the fund.''

We are here considering the rights of 8 named plaintiffs, their 3 attorneys, and the rights of more than 32,400 unnamed plaintiffs who did not participate in the litigation and had no notice of any of the proceedings. Most importantly the proceedings involving the allowance of attorney's fees, which, would reduce the total refund payable to the unnamed plaintiffs by the amount of such allowance.

This court noted in *Henry* v. *Powell,* supra, that Judge Taylor awarded the attorney's fee of $95,884.31 out of the common fund, at a hearing on April 1, 1977 which was not stenographically reported. The record does not reflect whether the unnamed plaintiff members had received reasonable notice of and an opportunity to be heard on the issue of allowance of attorney's fees. The lack of such notice may well violate traditional standards of procedural due process, but due process is not in issue here.

On May 4, 1977, Judge Bullion entered an order approved by all counsel of record setting aside Judge Taylor's order awarding attorney's fees which was reversed by this court in *Henry* v. *Powell,* supra, for want of an appealable order.

After remand and on December 27, 1978 Judge Bullion conducted an evidentiary hearing on the allowance of attorney's fees without notice to the unnamed plaintiffs. The three attorneys and two expert witness attorneys, who had nothing to do with the litigation, all testified before Judge Bullion at the stenographically reported hearing.

The potential of a class action case for abuse in award of attorney's fees out of a common fund was first recognized in *Trustees* v. *Greenough,* 105 U.S. 527 where the U.S. Supreme Court warned that court awarded attorney's fees should be "made with moderation and a jealous regard to the rights of those who are interested in the fund."

The unnamed plaintiffs, numbering over 32,400, had little or no opportunity to exercise any measure of control over the conduct of the litigation by the three attorneys or in the allowance of their attorney's fees. Without this opportunity and little incentive (the individual refunds would have been less than $20.00 per customer) the unnamed plaintiffs could hardly be expected to register any complaints. The common fund itself once established, no longer belonged to the city so the city had little incentive to oppose any allowance of attorney's fees out of the fund. In both the *Love* and *Lytle* cases, cited in the majority opinion, the awards of attorney's fees were vigorously opposed in an adversary

proceeding between two named parties both represented by their own attorneys.

Although most state courts, including our own, have considered few class action cases involving the allowance of attorney's fees, the federal courts have struggled with the problem for many years.

An experienced and prominent group of judges and lawyers prepared for use in class action cases in the federal courts a Manual of Complex Litigation.[2]

The Manual states that "few subjects associated with the class action device have generated as much critical commentary in recent years as the matter of attorney's fees."[3] It urges strict compliance with exacting standards approved by the courts to insure that awards of attorney's fees are not abused.

Although the standards for determining attorney's fees in class actions enunciated by the federal courts are somewhat varied, many federal appellate courts are requiring the federal trial courts to hold evidentiary hearings and to award attorney's fees only upon specific findings of facts based on proper standards rather than upon unsubstantiated discretion coupled with a recital of the various factors considered.

Illustrative of this trend is *Lindy Brothers Builder, Inc.* v. *American Radiator & Standard Sanitary Corp.*, 487 F. 2d 161 (C.A. 3. 1973), (Lindy I), an antitrust class action case, in which the Third Circuit held that the district court's "failure to hold an evidentiary hearing and its failure to follow proper standards in awarding fees to attorneys constituted an abuse of discretion", and found that "the mere listing of

---

[2]Manual for Complex Litigation, § 1.47, reprinted in Volume 1, Part 2, Moore's Federal Practice, pages 77-85 (2d Ed. 1948).

[3]See 7A C. Wright and A. Miller, Federal Practice and Procedure § 1803 (1976 Supp.); Lawyers and Involuntary Clients In Public Interest Litigation, 88 Harv. L. Rev. 849 (1975); Attorney's Fees in Individual and Class Action Antitrust Litigation, 60 Cal. L. Rev. 1656 (1972); Handler; The Shift from Substantive to Procedural Innovations in Antitrust Suits; The Twenty-Third Annual Antitrust Review, 71 Colum. L. Rev. 1, 9-10 (1971).

four factors for consideration by the court makes meaningful review difficult and gives little guidance to attorneys and claimants.''

In *City of Detroit* v. *Grinnell,* 495 F. 2d 448 (C.A.2. 1974), also a class action case, the Second Circuit observed that the initial duty of the trial court was ''to ascertain the number of hours which the attorney and his firm spent on the case,'' the next step was ''to place a value on that time . . . with a proper index being the hourly rate to which attorneys of like skill in the area would be typically entitled for a given type of work on the basis of an hourly rate of compensation.'' Like the *Lindy* court, the *Detroit* court then considered several ''less objective factors such as the risk of litigation, and concluded that an evidentiary hearing of the relevant facts on the issue of attorney's fees was a necessity.'' See also *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714 (C.A. 5, 1974) and *Merola* v. *Atlantic Richfield Co.,* 493 F. 2d 292 at 297 (C.A. 3 1974).

Our own Eighth Circuit in *Grunin* v. *International House of Pancakes,* 513 F. 2d 114 (C.A 8, 1975) has approved and followed *Detroit* and the *Lindy* four-step test in a class action case holding at page 128 of its opinion:

> ''The *Lindy* standards as interpreted in the *City of Detroit* and *Merola* provide the appropriate test for determining a discretionary fee award in a class action context.''

The Manual for Complex Litigation states that the standards imposed in the federal decisions ''make it imperative that counsel be required to keep precise records of the hours spent in working on the case and of the specific tasks which were performed in the time recorded.''[4] The Manual also states that the award of attorney's fees must be based upon these records and not upon estimates and recommends that the trial courts order counsel at the beginning of the action to keep accurate time sheets describing precisely how much time was spent in each activity and whether the activ-

---

[4]See Volume 1, Part 2, Moore's Federal Practice, at page 1.50.

ity itself was of benefit toward resolution of the case.

In the recent case of *In Re Anthracite Coal Antitrust Lit.*, 81 F.R.D. 499 (1979), after counsel for the class representatives had mailed notices to all customers of the defendants who might be members of the class, an evidentiary hearing was conducted on the petition for award of attorney's fees and costs. The petitioning attorneys made the following information available at the hearing: a written analysis of the work performed by each attorney, paralegal and law clerk, by date, description of services and amount of time expended; a detailed listing of all expenses incurred, including the date of incurrence, type and amount of expense; a statement of the normal billing rate of each attorney; and a narrative description of the proceedings and the asserted impact of each attorney's service upon the result achieved.

In *Miller* v. *Mackey International, Inc.*, 70 F.R.D. 533 (1976), the court appointed an independent attorney as guardian ad litem to represent the interests of the class in connection with the proceedings for determination of the attorney's fees. The court said:

> "Because the interest of the class members is specifically adverse to the interest of their lawyers who seek an attorney's fee to be awarded from the settlement fund, the class members must be protected. The attorney for the defendant has little concern for the manner in which the fund is divided. Consequently, the court appointed an experienced attorney as guardian ad litem for members of the class . . . this procedure both achieves protection for members of the class and enables the trial judge to remain in an impartial position."

See also: *Haas* v. *Pittsburgh Nat. Bank,* 77 F.R.D. 382 (1977).

The following factors militate against my affirmance of the full amount of the award of attorney's fees in this case:

1. The failure of any of the attorneys to record their time and furnish to the court a breakdown of who spent time,

both in and out of court, and in what endeavor so as to avoid duplication of effort. See *Colson* v. *Hilton Hotels Corp.,* 59 F.R.D. 324 (N.D. Ill. 1972).

2. The failure of one attorney to supply the court with any information relating to his standard hourly rate. See *Grunin* v. *International House of Pancakes,* supra.

3. The two judges who presided over the hearings which resulted in the allowance of attorney's fees had not presided over the substantive proceedings which culminated in the establishment of the common fund. See *White* v. *Auerbach,* 500 F. 2d 822 (C.A. 2, 1974).

4. Much of the work leading to the establishment of the common fund was necessarily performed by a master and the court without objection of any of the parties. See *Alpine Pharmacy, Inc.* v. *Chas. Pfizer & Co., Inc.,* 481 F. 2d 1045 (C.A. 2, 1973).

5. Supervision of distribution of the refunds was performed by a second master appointed by the court without objection of any of the parties. See *Alpine Pharmacy, Inc.* v. *Chas. Pfizer & Co., Inc.,* supra.

6. That no notice of the evidentiary hearing on the allowance of attorney's fees was given to the unnamed plaintiff members of the class. See *In Re Anthracite Coal Antitrust Lit.,* supra.

7. The unnamed plaintiff members of the class were not represented by counsel *i.e.* a guardian ad litem at the two hearings on the award of attorney's fees. See *Flast* v. *Cohen,* 392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968).

8. Both hearings on the issue of attorney's fees resulted in an identical award of 15% of the common fund suggestive of an arbitrary discount of the 25% contingent fee contract. See *Illinois* v. *Harper & Row Publishers, Inc.,* 55 F.R.D. 221 (N.D. Ill. 1972); Manual For Complex Litigation, reprinted in Vol. 1, Part 2, Moore's Federal Practice, § 1.47 (2d Ed. 1974).

9. The transcript of the trial court record shows that much, if not most, of the "in court" attorney's time was spent to obtain and enforce collection of their own fees. See *Lindy Bros. Builders* v. *American Radiator and Sanitary Corp.*, 540 F. 2d 102 (3d Cir. 1976) (Lindy II).

10. The use of three attorneys without appropriate documentation to support the need for three separate attorneys. See *The Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, 164 S.W. 720 (1914).

The three attorneys testified that altogether they spent 47 hours a week for 16 weeks on the case *i.e.* an aggregate of 752 hours. On the award of $95,884.31, their hourly rate would have been $127.50. The qualifications and experience of Walter Davidson, one of the two expert witnesses, was the most nearly comparable to that of John Harmon. Mr. Harmon did not testify as to his usual and customary hourly rate but Mr. Davidson testified that his usual and customary hourly rate was $70.00. The expert witnesses had no knowledge of the time spent by the three attorneys. Neither of the expert witnesses testified that they had handled any utility rate class action cases.

Upon consideration of the transcript of the entire trial court record in the light of the affirmative factors (enumerated in the majority opinion) and the negative factors (enumerated in this opinion), I would award a reasonable attorney's fee to counsel for the class in the amount of $52,640.00, for their services rendered, both in and out of court, which were concluded with the establishment of the fund on December 30, 1976. I would not award attorney's fee for the efforts exerted by the three attorneys after December 30, 1976 to obtain and enforce collection of their own fees.

As modified by reduction of the allowance of attorney's fees from $95,884.31 to $52,640.00 (752 estimated hours times $70.00 per hour), I would affirm.

Mr. Justice George Rose Smith joins in this opinion.