In re ANTHRACITE COAL ANTITRUST LITIGATION. Master File No. MDL 293.

This Document Relates to: Wilkes-Barre Steam Heat Co.; Steven J. Hartz, Trustee in Bankruptcy for Neast & Co.; Colonial Fuel Company.

Civ. Nos. 76–1500, 77–699 and 77–1049.

United States District Court,
M. D. Pennsylvania.

Jan. 23, 1979.

Following settlement of anthracite coal antitrust case, counsel applied for attorney fees and expenses. The District Court, Muir, J., held that attorney fees of $919,800 and expenses of $44,252.98 would be awarded.

Victor Wright, Abraham C. Reich, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., Henry P. Perciballi, Williamsport, Pa., for plaintiff Wilkes-Barre Steam Heat Co.

Richard F. Stevens, Allentown, Pa., Robert Lazorchick, Lansford, Pa., for four Independent Coal Dealers.

Arnold Levin, Michael Fishbein, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., Lee C. Swartz, Harrisburg, Pa., for plaintiff Steven J. Hartz, Trustee in Bankruptcy for Neast & Co., Inc.

H. Laddie Montague, Jr., Merrill G. Davidoff, Daniel Berger, Berger & Montague, Philadelphia, Pa., William Bode, Alfred Lawrence Toombs, Batzel, Nunn & Bode, Washington, D. C., for plaintiff Colonial Fuel Co.

James Watt, Pottsville, Pa., for defendant Reading Anthracite Co.

Edwin P. Rome, Richard P. McElroy, Frederica Massiah-Jackson, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Kathleen M. Mills, Bethlehem, Pa., for defendants Greenwood Stripping Co., Pocono Fuels Co. and Lehigh Navigation-Dodson Co.

Edward F. Mannino, John F. Stoviak, Karen Marek McAlinn, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., Morey M. Myers, Gelb & Myers, Scranton, Pa., for defendants Reading Anthracite Coal Co., Pagnotti Enterprises, Inc., Pagnotti Coal Co., Lehigh Valley Anthracite, Inc., Jeddo-Highland Coal Co., and Lehigh Valley Coal Sales Co.

Leon H. Kline, Philadelphia, Pa., for defendants Glen Burn Colliery, Inc. and Farragut Anthracite Co.

## OPINION

MUIR, District Judge.

### I. Introduction.

Before the Court is the joint application of the following counsel [hereinafter jointly

referred to as "petitioning firms"] for an award of attorneys' fees of $930,000 plus out-of-pocket expenses of $44,252.98: Berger and Montague, P.C.; Adler, Barish, Daniels, Levin & Creskoff; Fox, Rothschild, O'Brien and Frankel; Batzell, Nunn & Bode; Hepford, Zimmerman & Swartz; and Henry P. Perciballi.

These three related cases were assigned to the undersigned judge on August 22, 1977 and November 16, 1977 for the purpose of conducting pre-trial proceedings. The cases have been settled as temporary class actions on behalf of dealers and industrial purchasers, respectively. The proposed settlements were approved by the undersigned judge by Opinion dated September 29, 1978 and by Final Order entered October 14, 1978.

Counsel for the class representatives filed a joint petition for award of attorneys' fees and costs on October 24, 1978. Following the mailing of notices to all customers of the defendants who might be members of the classes, an evidentiary hearing was held on November 27, 1978 concerning the joint petition for award of fees and costs. Fox-Rothschild filed a supplement to the appendix to their petition on December 4, 1978 which contained an analysis of the time spent by J. Victor O'Brien in Civil No. 76–1500. On December 8, 1978, counsel for the Plaintiffs filed proposed findings of fact and conclusions of law with respect to their application for counsel fees accompanied by a supplemental memorandum relating to the question of whether law clerks' and paralegals' services are properly subject to a multiplier and a supplemental affidavit of counsel. On December 14, 1978, four coal dealers filed counterproposed findings of fact and conclusions of law accompanied by a memorandum in opposition to the petition for counsel fees. The Plaintiffs filed a reply brief on December 26, 1978. The following represent the Court's findings of fact and conclusions of law relating to a fair and reasonable award of attorneys' fees and reimbursement of costs.

## II. Findings of Fact.

1. Berger and Montague, P.C. ("Berger and Montague"), of Philadelphia, Pennsylvania and Batzell, Nunn and Bode ("Bode firm") of Washington, D. C., were counsel in action No. 77–1049, in which Colonial Fuel Company was one of two class representatives which had filed class actions on behalf of anthracite coal dealers.

2. Adler, Barish, Daniels, Levin and Creskoff ("Adler-Barish") of Philadelphia, Pennsylvania and Hepford, Zimmerman and Swartz ("Swartz") of Harrisburg, Pennsylvania, were counsel in action No. 77–699 in which Steven J. Hartz, Trustee in Bankruptcy for Neast & Company, was the other class representative which filed a class action on behalf of anthracite coal dealers.

3. Fox, Rothschild, O'Brien and Frankel ("Fox-Rothschild") of Philadelphia, Pennsylvania, and Henry P. Perciballi ("Perciballi") of Williamsport, Pennsylvania, were counsel in action No. 76–1500 in which Wilkes-Barre Steam Heat Company was the class representative on behalf of industrial purchasers of anthracite coal.

4. Prior to the assignment and coordination of these cases to the undersigned judge, each petitioning firm acted separately in investigating, filing and prosecuting its respective case.

5. Upon the assignment and coordination of these cases to the undersigned judge, the petitioning firms coordinated their efforts in order to act efficiently and to avoid duplication of effort and expenses.

6. Pursuant to this Court's practice and procedure orders issued in each of these cases, each petitioning firm has filed with the Court the following information concerning its involvement in these cases:

    6.1 An analysis of the work performed by each attorney by date, description of services and amount of time expended;

    6.2 An analysis of the work performed by each paralegal employee and law clerk employed by a petitioning firm by date, description of services and amount of time expended;

6.3 An analysis of the time expended by each attorney and by paralegals and law clerks generally as to the category of work performed;

6.4 A detailed listing of all expenses incurred, including the date of incurrence, the type of expense and the amount of expense;

6.5 A description of the status or standing at the Bar of each petitioning firm and of the particular attorneys who worked at these cases;

6.6 A statement of the normal billing rates of each petitioning firm for each attorney involved in these cases; and

6.7 A narrative description of the proceedings in these cases and of the services which each petitioning firm performed in these proceedings together with their asserted impact upon the results obtained.

7. The joint petition and the supporting papers were complete and fully satisfied the requirements of this Court.

8. At the evidentiary hearing on November 27, 1978, H. Laddie Montague, Jr., Esq., testified on behalf of all petitioning firms generally and on behalf of Berger and Montague and the Bode firm specifically; Arnold Levin, Esq., testified on behalf of the Adler-Barish firm and the Swartz firm; and Victor Wright, Esq., testified on behalf of the Fox-Rothschild firm and Mr. Perciballi.

9. Two attorneys, Richard F. Stevens, Esq. and Robert Lazorchick, Esq. representing four members of the dealer class who had filed a notice of intention to appear and show cause, appeared at the hearing and Mr. Stevens cross-examined witnesses; no other class members or counsel therefor appeared at the evidentiary hearing and none filed objections to the joint petition for award of attorneys' fees and costs.

10. The main counsel in these settled cases were Berger and Montague, Adler-Barish and Fox-Rothschild.

11. Where the interests of the dealer and industrial classes diverged, Berger and Montague and Adler-Barish represented the dealer class and Fox-Rothschild represented the industrial class particularly with respect to discovery and class briefing.

12. The Court had declined to appoint liaison counsel for Plaintiffs in September, 1977 and by mutual consent of the petitioning firms, Berger and Montague acted as liaison counsel for Plaintiffs in these class actions throughout the consolidation of these three cases. As such, H. Laddie Montague, Jr., who was in charge of the litigation for Berger and Montague, was responsible for coordinating all pretrial activities, including discovery, the class action briefing and hearing, and the negotiation of the settlements.

13. With the consent of other counsel, Mr. Montague acted as lead counsel in preparation of and at the hearing on class certification, at settlement negotiations, at the hearing on approval of the proposed settlements and at the hearing on approval of the proposed plan of allocation.

14. The petitioning firms have received no counsel fees to date and have been retained only under contingent fee arrangements.

15. Berger and Montague maintained contemporaneous daily time sheets for all of its attorneys, law clerks, and paralegals, and recorded time on computer print-outs. Their time sheets reflect for each person the date of service, the category of service rendered and the time expended. The court is satisfied that these time records are accurate, subject to human error.

16. The time expended in these cases by the attorneys, paralegals and law clerks of Berger and Montague totals 6,295.50 hours and is broken down as follows:

a. Attorneys:

| | | |
|---|---:|---|
| H. Laddie Montague, Jr. | 514.50 | hours |
| Merrill G. Davidoff | 778.50 | hours |
| Daniel Berger | 1,335.00 | hours |
| Alan Kessler | 389.75 | hours |
| Joan Zubras | 503.00 | hours |
| Other attorneys | 114.75 | hours |
| Total Attorney Hours: | 3,635.50 | hours |

b. Paralegals: 2,394.25 hours

c. Law Clerks: 265.75 hours

17. The standings of Berger and Montague and Mr. Montague are very high. The firm and Mr. Montague are rated "av" in Martindale-Hubbell. They are experienced, qualified and efficient antitrust counsel and have been so recognized by many courts.

18. The following are the hourly rates used by Berger and Montague for normal billing purposes:

| | |
|---|---|
| H. Laddie Montague, Jr. | $150 |
| Merrill G. Davidoff | 100 |
| Daniel Berger | 75 |
| Alan Kessler | 65 |
| Joan Zubras | 45 |
| Other Attorneys | 60 * |
| Law Clerks | 35 |
| Paralegals | 25 |

19. The quality of work performed by Mr. Montague has been at an extremely high level. All matters in these cases presented to the Court by Mr. Montague have been thoroughly prepared and well presented.

20. The quality of the work has been reflected in the favorable and expeditious results achieved in this complex litigation, as is evidenced in part by the fact that no class member has objected to either the fairness of the settlements or the allocation of the settlements.

21. The paralegals employed by Berger and Montague in these cases are all trained and, so far as the Court can ascertain, qualified, and at all times worked under the direction and supervision of an attorney or attorneys.

22. By employing paralegals and law clerks, the petitioning firms acted efficiently and benefitted the classes, since paralegals have lower hourly rates than associate attorneys.

23. Of the total 6,295.50 hours expended by Berger and Montague, only 8 percent was expended by Mr. Montague, only 20.5 percent by the two counsel with the highest rates (Messrs. Montague and Davidoff), and 42.55 percent was expended by paralegals and law clerks.

24. The out-of-pocket expenses incurred by Berger and Montague through September 25, 1978, totalled $31,642.72.

25. These expenses were fully documented with adequate records which were produced at the hearing on November 27, 1978, and were reasonable and necessary for the successful prosecution of these cases.

26. The services performed by Berger and Montague not only benefitted the dealer class but also benefitted the industrial purchasers class.

27. Adler-Barish maintained contemporaneous daily time sheets for all of its attorneys and paralegals. The time sheets reflect for each person the date of service, the category of service rendered and the time expended. The Court is satisfied that these time records are accurate, subject to human error.

28. The time expended in these cases by the attorneys and paralegals of Adler-Barish totals 1,600.25 hours and is broken down as follows:

A. Attorneys:

| | |
|---|---|
| Arnold Levin | 573.25 hours |
| Michael D. Fishbein | 336.25 hours |
| Josephine B. Stamm | 11.00 hours |
| Total Attorney Hours: | 920.50 hours |

B. Paralegals:

| | |
|---|---|
| Barbara Levin | 544.00 hours |
| Arthur DiTullio | 30.50 hours |
| Morton Medvene | 21.00 hours |
| Louis Parise | 63.25 hours |
| Carole Aust | 6.00 hours |
| Josephine Bartle | 4.00 hours |
| Denise Tini | 4.00 hours |
| Stella Wroncko | 7.00 hours |
| Total Paralegal Hours: | 679.75 hours |

29. The standing of Adler-Barish is very high. The firm is rated "av" in Martindale-Hubbell. They are experienced, qualified and efficient antitrust counsel and have been so recognized by many courts.

* This represents a "mixed rate" for nine attorneys of Berger and Montague who in the aggregate expended a total of 114.75 hours.

30. The following are the hourly rates used by Adler-Barish for normal billing purposes:

| | |
|---|---|
| Arnold Levin | $100 |
| Michael D. Fishbein | 60 |
| Josephine B. Stamm | 50 |
| Paralegals | 25 |

31. The quality of work performed by Mr. Levin and the attorneys from Adler-Barish who assisted him—as exhibited both in the courtroom and in the papers filed—has been at a high level. All matters in these cases presented to the Court by Adler-Barish have been thoroughly prepared and well presented.

32. The paralegals employed by Adler-Barish in these cases are all trained and at all times worked under the direction and supervision of an attorney or attorneys.

33. The out-of-pocket expenses incurred by Adler-Barish through September 25, 1978 totalled $2,186.85. Adler-Barish produced its receipts and cost records at the November 27, 1978 hearing. The expenses appear reasonable and necessary for the successful prosecution of these cases.

34. The services performed by Adler-Barish benefitted the dealer class and also benefitted the industrial purchaser class.

35. Fox-Rothschild maintained contemporaneous daily time records for each attorney and paralegal which reflected the date service was performed, the category of service performed and the total time expended on such service. The Court is satisfied that the time records are accurate, subject to human error.

36. The time expended in these cases by the attorneys and paralegals of Fox-Rothschild through September 25, 1978 totals 2087.1 hours as follows:

A.  Attorneys:

| | | |
|---|---|---|
| Victor Wright | 379.7 | hours |
| William J. Daniels | 16.8 | hours |
| J. Victor O'Brien | 83.8 | hours |
| Mary C. McMonagle | 42.3 | hours |
| Barnett Satinsky | 2.0 | hours |
| Henry C. Fader | 5.5 | hours |
| Abraham C. Reich | 1,017.4 | hours |
| Total Attorney Hours: | 1,547.50 | hours |

B.  Paralegals:

| | | |
|---|---|---|
| Dianne Butterworth | 32.50 | hours |
| Renee E. Coyne | 135.50 | hours |
| Deborah E. Brooks | 294.00 | hours |
| Kristin Karkut | 77.6 | hours |
| Total Paralegal Hours: | 539.60 | hours |

37. Fox-Rothschild was founded in 1907 and its standing at the Bar is very high. Both the firm and Mr. Wright are rated "av" in Martindale-Hubbell. They are experienced, qualified, and efficient antitrust counsel and have been so recognized by other courts.

38. The following are the hourly rates which Fox-Rothschild currently bills its clients for the time of the following persons:

| | |
|---|---|
| Victor Wright | $100 |
| William J. Daniel | 75 |
| J. Victor O'Brien | 100 |
| Mary C. McMonagle | 50 |
| Barnett Satinsky | 45 |
| Henry C. Fader | 50 |
| Abraham C. Reich | 50 |
| Paralegals | 25 |

39. The quality of the work performed by Mr. Wright and the attorneys from Fox-Rothschild who assisted him—as exhibited both in the courtroom and in the papers filed—has been at a high level. All matters in these cases presented to the Court by Fox-Rothschild have been thoroughly prepared and well presented.

40. The paralegals employed by Fox-Rothschild were trained and at all times worked under the direction and supervision of an attorney or attorneys.

41. Of the total of 2,087.1 hours expended by Fox-Rothschild, only 23 percent was expended by partners in the firm (with hourly rates of $75 and $100), while 77 percent was spent by associates and paralegals (with hourly rates of $25 to $50).

42. The out-of-pocket expenses incurred by Fox-Rothschild through September 25, 1978 totalled $10,252.43.

43. Each item of expense incurred by Fox-Rothschild was substantiated by receipts which were tendered for examination at the time of the hearing and was reasonable and necessary for the successful prosecution of these cases.

44. The services performed by Fox-Rothschild benefitted not only the industrial class but the dealer class as well.

45. The firm of Batzell, Nunn and Bode is general counsel for Plaintiff Colonial Fuel Company and its role in this litigation was primarily to gather and organize Colonial's responses to various discovery demands and to engage in all important strategy decisions, including analyzing and evaluating the settlements now approved.

46. The Bode firm maintained contemporaneous time records which accurately evidenced the services its attorneys performed in this litigation. These time records were presented to the Court in summary fashion, setting forth for each attorney and law clerk the date of service, a brief description of the service and the time expended on that date. The Court is satisfied that these time records are accurate, subject to human error.

47. The Bode firm is a small firm which specializes in litigation and administrative regulatory agency proceedings, particularly in the energy field. The Bode firm and Mr. Toombs of that firm have "av" ratings by Martindale-Hubbell.

48. The Bode firm has expended a total of 247.50 hours as shown by its time records, as follows:

A. Attorneys:

| | | |
|---|---|---|
| William H. Bode | 80.25 | hours |
| Alfred L. Toombs | 80.50 | hours |
| William Lane | 19.75 | hours |
| Associates | 12.00 | hours |
| Total Attorney Hours | 192.50 | hours |

B. Law Clerks: 55.00 hours

49. The following hourly rates are the normal billing rates charged by the Bode firm:

| | |
|---|---|
| Messrs. Bode, Toombs and Lane (partners): | $95 |
| Associates: | $65 |
| Law Clerks: | $25 |

50. All out-of-pocket expenses incurred by the Bode firm have been billed and paid by Colonial Fuel Company.

51. Adler-Barish associated themselves with the law firm of Hepford, Zimmerman and Swartz to act as local counsel in the Middle District of Pennsylvania. Lee C. Swartz, Esquire was the partner principally assigned to this litigation by the Swartz firm. Mr. Swartz actively practices before the Bar of this Court and enjoys a good reputation in this judicial district.

52. The Swartz firm maintained contemporaneous time records which accurately evidenced the services its attorneys performed in this litigation. These time records were presented to the Court in summary fashion, setting forth for each attorney and paralegal the date of service, a brief description of the services and the time expended on that date. The Court is satisfied that these time records are accurate, subject to human error.

53. The Swartz firm has expended a total of 41.5 hours as evidenced by its time records as follows:

A. Attorney:

| | |
|---|---|
| Lee C. Swartz | 35 hours |

B. Paralegal:

| | |
|---|---|
| Pamela J. Ruta | 6.5 hours |

54. The following are the normal billing rates charged by the Swartz firm:

| | |
|---|---|
| Lee C. Swartz | $100 |
| Pamela J. Ruta | 25 |

55. The out-of-pocket expenses incurred by the Swartz firm through September 25, 1978 totalled $130.98, all of which were reasonable and necessary for the successful prosecution of these cases.

56. After this litigation was transferred to this District for consolidated pretrial proceedings, Fox-Rothschild associated with the law offices of Henry P. Perciballi for assistance in the prosecution and administration of the lawsuit. Anthony J. Grieco, Esquire of that office provided this assistance.

57. Mr. Grieco maintained contemporaneous time records which accurately reflected the services he performed for Fox-Rothschild as well as for the other petitioning firms. These time records were presented to the Court in the same detail as those of the other petitioning firms. The

Court is satisfied that these time records are accurate, subject to human error.

58. A total of 40.25 hours was expended by Mr. Grieco at a requested hourly rate of $40.00 per hour.

59. A total out-of-pocket expense of $40.00 was incurred by the law offices of Henry P. Perciballi, which was a necessary and reasonable expense.

60. These cases were preceded by related Government Criminal cases, Nos. 76–149 and 77–72, both in the Middle District of Pennsylvania.

61. Criminal Action No. 76–149 named six corporate defendants which were also named as Defendants in these actions.

62. Criminal Action No. 76–149 resulted in pleas of *nolo contendere* being entered on behalf of each corporate defendant.

63. Criminal Action No. 77–72 named three individuals, one of whom pleaded *nolo contendere*, one of whom was dismissed for reasons of poor health, and one of whom (Thomas Gillen) was convicted after a non-jury trial. An appeal is presently pending from that conviction.

64. The petitioning firms engaged in discovery far beyond the scope of the Government investigation and criminal actions with respect to issues not relevant to those Government proceedings.

65. The petitioning firms discovered documents at Blue Coal which were turned over to the United States Justice Department which previously had no knowledge of such documents and were eventually placed in evidence as Government exhibits at the trial of *U. S. v. Gillen*.

66. The evidence at the *Gillen* trial did not deal with the issues of class certification, the fact of injury or impact, and damages, all of which are important issues in these private class action cases.

67. The petitioning firms faced the risk that their respective class actions might not have been properly certifiable under Rule 23(a) and (b)(3) of the Federal Rules of Civil

Procedure. (See Finding of Fact No. 34 of Opinion of September 29, 1978).

68. Had the classes not been certified, the petitioning firms would not have been compensated for the substantial time and expenses they expended in preparing for and presenting the class issues to this Court.

69. These cases presented the risk that pending legislation would effectively over-rule *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), in which event the recovery by the dealer class, and to a lesser extent the industrial class, would be substantially reduced or even eliminated. (See Findings of Fact Nos. 25, 26 and 27 of Opinion of September 29, 1978).

70. A further risk faced by counsel of the petitioning firms was that of proving that the prices charged to the industrial class were affected by the conspiracy since the industrial purchasers:

(a) often did not purchase at circular prices but rather at negotiated prices; and

(b) purchased substantial quantities of buckwheat Nos. 4 and 5 and filter coal which were not included on the Defendants' circular price lists. (See Findings of Fact Nos. 29, 30 and 31 of Opinion of September 29, 1978).

71. The petitioning firms faced the risk of receiving little or no compensation for their services if they were unsuccessful in this litigation which risk was known to them at the time they began these cases.

72. The intensive efforts of the petitioning firms created the settlements in these cases.

73. The settlements were achieved quickly and after extremely extensive discovery had been had by the petitioning firms. (See Finding of Fact No. 14 of Opinion of September 29, 1978).

74. The "lodestar" fees requested by the petitioning firms total $613,500 and are determined as follows:

|  | Hours Expended | X | Hourly Rates | ≡ | Lodestar |
|---|---|---|---|---|---|
| **a. Berger & Montague:** | | | | | |
| H. Laddie Montague, Jr. | 514.50 | x | $150 | = | $ 77,175.00 |
| Merrill G. Davidoff | 778.50 | x | 100 | = | 77,850.00 |
| Daniel Berger | 1,335.00 | x | 75 | = | 100,125.00 |
| Alan Kessler | 389.75 | x | 65 | = | 25,333.75 |
| Joan Zubras | 503.00 | x | 45 | = | 22,635.00 |
| Other Attorneys | 114.25 | x | 60 | = | 6,855.00 |
| Law Clerks | 265.75 | x | 35 | = | 9,301.25 |
| Paralegals | 2,394.25 | x | 25 | = | 59,856.25 |
| Lodestar | | | | | $379,131.25 |
| **b. Batzell, Nunn and Bode:** | | | | | |
| William Bode | 80.25 | x | 95 | = | 7,623.75 |
| Alfred L. Toombs | 80.50 | x | 95 | = | 7,647.50 |
| William Lane | 19.75 | x | 95 | = | 1,876.25 |
| Associates | 12.00 | x | 65 | = | 780.00 |
| Law Clerks | 55.00 | x | 25 | = | 1,375.50 |
| Lodestar | | | | | $19,302.50 |
| **c. Adler, Barish, Daniels, Levin & Creskoff:** | | | | | |
| Arnold Levin | 573.25 | x | 100 | = | 57,325.00 |
| Michael D. Fishbein | 336.25 | x | 60 | = | 20,175.00 |
| Josephine B. Stamm | 11.00 | x | 50 | = | 550.00 |
| Paralegals | 679.75 | x | 25 | = | 16,993.75 |
| Lodestar | | | | | $95,043.75 |
| **d. Hepford, Zimmerman & Swartz:** | | | | | |
| Lee C. Swartz | 35.00 | x | 100 | = | 3,500.00 |
| Paralegal | 6.50 | x | 25 | = | 162.50 |
| Lodestar | | | | | $3,662.50 |
| **e. Fox, Rothschild, O'Brien & Frankel:** | | | | | |
| Victor Wright | 379.7 | x | 100 | = | $37,970.00 |
| William J. Daniel | 16.8 | x | 75 | = | 1,260.00 |
| J. Victor O'Brien | 83.8 | x | 100 | = | 8,380.00 |
| Mary C. McMonagle | 42.3 | x | 50 | = | 2,115.00 |
| Barnett Satinsky | 2.0 | x | 45 | = | 90.00 |
| Henry C. Fader | 5.5 | x | 50 | = | 275.00 |
| Abraham C. Reich | 1,017.4 | x | 50 | = | 50,870.00 |
| Paralegals | 539.6 | x | 25 | = | 13,490.00 |
| Lodestar | | | | | $114,450.00 |
| **f. Henry P. Perciballi:** | | | | | |
| Anthony J. Grieco, Associate | 40.25 | x | 40 | = | 1,610.00 |
| Lodestar | | | | | $1,610.00 |

75. In addition to the time for which the petitioning firms request compensation, the petitioning firms have expended a substantial amount of time in preparing their thorough fee applications and in preparing for and participating in the hearing relating to the fee award, for all of which no compensation is sought.

76. The settlement of these cases raised a complex and novel question for the following reason: On the one hand, the *Hartz* and *Wilkes-Barre Steam Heat* cases were scheduled on September 1977 for trial on the January, 1979 trial list with jury drawing set for January 4, 1979, and on the other hand, because of the pending legislation concerning *Illinois Brick Co. v. Illinois, supra,* the defendants desired to withdraw from the settlement if, before the end of 1978, such legislation were passed by Congress.

77. The petitioning firms resolved this problem in a novel way which (1) made the settlements finite, assuming that they received this Court's approval, and (2) allowed $800,000 to be retained by Defendants for the sole purpose of satisfying potential claims of indirect purchasers, if, in fact, the legislation passed on or before January 1, 1979.

78. The $800,000 holdback provision enabled these settlements to be concluded and assured the dealer class of a minimum settlement of $2,000,000 even if the *Illinois Brick* legislation passed, which legislation would have been severely adverse to the dealer claims.

79. The *Illinois Brick* legislation did not become law on or before January 1, 1979.

80. The petitioning firms have jointly requested a total fee award for services performed through September 25, 1978, of $930,000.00 and reimbursement of out-of-pocket expenses in the amount of $44,252.98.

81. The total fee request represents a multiple for risk and quality of work of 1.516 of the lodestar fee, including attorney's, law clerks' and paralegals' hours.

82. The total fee requested represents 20.2% of the total gross settlement fund, not including interest earned.

83. The petitioning firms estimate that their future attorneys' fee requests (including paralegals), for settlement administration will not exceed $50,000 and represent that no multiple will be requested in their future fee applications.

### III. Discussion.

There are three primary issues that the Court must address in determining the amount of attorney's fees to be awarded to the petitioning firms. They are entitled to such fees under the "equitable fund" doctrine. First, the Court must determine whether the time actually spent by those attorneys in creating the settlement fund was a reasonable amount of time to devote to that activity and whether the hourly rates charged by those attorneys are reasonable. Second, the Court must consider whether the objective basis of the fee award, which is obtained by multiplying the reasonable number of hours by the reasonable hourly rate, should be increased either because of the contingent nature of success of this litigation or because of the exceptional quality of work performed or both. Finally, the Court must consider the question of whether to permit the petitioning firms to recover for paralegals' and law clerks' time on an hourly basis and, if so, whether that reimbursement should also be subject to a multiplier for quality or contingency. The analysis of the attorney's fees petition will be in conformance with the standards set forth by the United States Court of Appeals for the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). *See also Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978); *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165 (3d Cir. 1975); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292 (3d Cir. 1974).

It is the view of the Court that the total number of hours spent by the attorneys, law clerks, and paralegals in reaching the settlement obtained in these three cases is reasonable. The six petitioning firms involved spent 10,312.1 hours in the preparation of these cases and the Court finds that considering the complexity of the cases, the nature of proceedings which were conduct-

ed prior to the settlement, the fact that all three were brought as class actions, the fact that extensive discovery had taken place both on preliminary issues and on the merits prior to the settlement, and the somewhat novel approach to and the size of the settlement itself that number of hours was reasonably necessary to the creation of the fund involved. With respect to the hourly rates charged by each attorney, the Court is of the view that those rates are in accordance with prevailing rates charged by attorneys with similar backgrounds, education and experience practicing in the localities of the attorneys working for the petitioning firms in this case. A detailed review of each attorney, the work which he performed, and his hourly rate is not necessary. The rates are set forth in the findings of fact and the Court has reviewed each rate and found it to be reasonable. The parties who appeared at the evidentiary hearing to contest the fee petition conceded that the rates charged by the attorneys in this case were reasonable. The only attorney charging over $100.00 per hour was H. Laddie Montague, Jr., who stated that his normal hourly rate is $150.00 per hour. It is the Court's view based upon its observation of Mr. Montague's expertise in this field and the expeditious manner in which he conducted the litigation of his case and coordinated proceedings for all the Plaintiffs involved in these cases prior to the settlement that his $150.00 per hour rate is reasonable. The Court expresses a similar view with respect to the attorneys who charged rates of $100.00 including Merrill G. Davidoff of the firm of Berger and Montague, Arnold Levin of the Adler-Barish firm, Lee C. Swartz of Hepford, Zimmerman and Swartz, and Victor Wright and the late J. Victor O'Brien of Fox-Rothschild.

Before considering what multiplier, if any, should be applied to the figure arrived at by multiplying the number of hours spent by each attorney times his reasonable hourly rate, the Court must consider the question of whether the petitioning firms may recover for the services of law clerks and paralegals based upon an hourly billing rate for each or whether recovery for services of such paraprofessionals is limited to the actual amount of out-of-pocket expenses incurred by the petitioning firms in employing such personnel. The latter approach is apparently the one adopted by the United States Court of Appeals for the Second Circuit. In *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974), the Court stated that paralegals' time cannot be considered in determining the proper fee to be awarded in a case similar to this one. The Court indicated that its ruling was based upon the principle that attorney's fees may be awarded for the performance of professional duties only and should not be awarded for the execution of duties which are more properly performed by persons other than attorneys such as trustees or receivers. The Court concluded that if such awards were made, attorneys would be encouraged to perform non-professional duties in order to increase the size of a fee award. *See also In Re Hardwick & Magee Co.,* 355 F.Supp. 58, 73 (E.D.Pa.1973). The opposite approach has been taken by several judges in the Eastern District of Pennsylvania. In *Dorfman v. First Boston Corp.,* 70 F.R.D. 366, 373–74 (E.D.Pa.1976), Chief Judge Lord concluded based upon evidence presented to him at an attorney's fees hearing that the prevailing practice in the Philadelphia area is to bill the services of paraprofessionals on an hourly basis and that such services are properly included in the number of hours which relate to the award of attorney's fees. Judge Lord indicated that any other rule would encourage law firms conducting litigation involving the possible recovery of attorney's fees to assign work more properly done by a paraprofessional to an associate or junior partner in the firm so that recovery could be had for the performance of his services. That approach has been followed by Judge Becker in *Entin v. Barg,* 412 F.Supp. 508, 517 (E.D. Pa.1976) and Judge Fullam in *Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 711 (E.D.Pa.1977).

It is the view of the Court that firms like the petitioning firms in these cases divide work assignments within the

firm based upon the manner in which the services can be performed most efficiently and with the least possible expense and that whether or not such firms are awarded time for law clerks' and paralegals' services in an attorney's fees case will have little or no effect upon the division of labor within the firm. However, the Court is not persuaded by the rationale of the Court of Appeals for the Second Circuit that an award for such services should be disallowed based upon a principle which appears to have no application in this context. In this Circuit, a District Court is free to devalue the services of an attorney if he performs work which could more properly or equally as well have been performed by a paraprofessional or a person completely disassociated from the legal profession such as a trustee or receiver. Thus, an award of attorneys' fees for performance of "nonprofessional" duties need not be made if the Court is convinced that an attorney should not have undertaken such tasks and such a decision is not inconsistent with allowing a firm to recover the fair value of services rendered by paraprofessionals. It is the view of this Court that the proper inquiry to be made with respect to whether the service of paraprofessionals should be included in an attorney's fees award is whether as a matter of normal billing practice such services are charged to a client based upon the number of hours spent by the paraprofessional in the case times an hourly fee for his services or whether compensation for such work is included as part of overhead and taken from the fee charged by the attorney. If the former is true, the firm's overhead and profit are derived from the fees charged for paraprofessionals as well as attorney's services and, because the billing practices with respect to the two are identical, there is no reason to differentiate between them for purposes of awarding attorney's fees. The opposite result would deprive a petitioning firm of properly-earned compensation. However, if the latter is the usual case, then to award attorney's fees based upon an hourly rate charged for paraprofessionals would be a duplication of fees awarded to the attorneys themselves because the para-

professionals' salaries and other expenses would already have been allocated to that part of the firm's overhead which is taken into account in determining the particular attorney's hourly billing rate.

█ The Court concludes that the petitioning firms have met their burden in this case of demonstrating that paralegals' and law clerks' services are billed by them to their clients on the basis of an hourly rate and that such a practice is reasonable and common in the areas in which the firms are located. The Court also believes that the amounts charged for law clerks' and paralegals' services by the petitioning firms are reasonable and that an attorney's fee should be awarded not only for the work performed by attorneys but also for the work performed by law clerks and paralegals. Consequently, the Court accepts the proposed "lodestar" figures set forth in the findings of fact as being the objective basis for the fee awards in these cases. Those bases, prior to adjustment for contingency and quality, are as follows:

| Petitioning Firm | Objective Basis |
|---|---|
| Berger & Montague | $379,131.25 |
| Batzell, Nunn and Bode | 19,302.50 |
| Adler-Barish | 95,043.75 |
| Hepford, Zimmerman & Swartz | 3,662.50 |
| Fox-Rothschild | 114,450.00 |
| Henry P. Perciballi | 1,610.00 |
| Total | $613,200.00 |

█ Once the objective basis of the fee award has been determined, the Court must consider whether that basis should be increased to reflect either the contingent nature of success of these actions or the quality of work performed. With respect to the former factor, the Court may consider the burden borne by the Plaintiffs in these cases, including the legal and factual complexities of the actions and the probability of the Defendant's liability, the risks taken in developing the cases, including the hours expended without guarantee of remuneration, the amount, if any, of out-of-pocket expenses advanced by the attorneys, their development of prior expertise in the area and whether there was a delay in receipt of

payment by the attorneys. In this case, the Plaintiffs bore a fairly heavy burden of establishing liability in this case. The Court recognizes that there were criminal indictments of many of the Defendants involved in these cases for violations of the antitrust laws and that the evidence developed by the United States, including that presented at the trial of *United States v. Gillen,* 458 F.Supp. 886 (M.D.Pa.) would have been of assistance to the Plaintiffs in establishing the existence of a price-fixing conspiracy. On the other hand, these Plaintiffs faced the possibility of being unable to establish certain key points at trial on the merits because of the persistence of many defense witnesses in invoking their Fifth Amendment privilege during discovery proceedings. Further, the Plaintiffs faced the risks that the classes which they represented would not be certified by this Court and that Congress would pass legislation overruling the decision in *Illinois Brick Company v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Other risks faced by the Plaintiffs have been enumerated in this Court's opinion in the above-captioned cases dated September 29, 1978 and need not be repeated here. *See In re Anthracite Coal Antitrust Litigation,* 79 F.R.D. 707 (M.D.Pa. 1978). The petitioning firms risked a large number of hours in these cases without the guarantee of remuneration because the cases were taken on a contingent fee basis and, although over 10,000 hours have been expended by the petitioning firms to date, they have yet to receive a fee. Additionally, substantial out-of-pocket expenses were advanced. For all these reasons, the Court concludes that the complexity of the litigation by itself would justify the 50% increase in fees which has been requested by the petitioning firms. Because the Court has concluded that the time of paraprofessionals should be treated like attorney time at least for determining the objective basis of the fee award, the Court must consider whether that time is also subject to a multiplier for contingency. The cases cited by the Court in its discussion of whether paraprofessionals' time should be treated like attorney's time applied multipliers for both contingency and quality to all the work done by a particular firm without further discussion of whether paraprofessionals' time was properly subject to a multiplier. It is the view of the Court that most of the factors which are relevant to an increase based upon the contingent nature of the success of an action apply equally to attorney and paraprofessional time. The key factor to be used in determining whether an increase based upon contingency is to be awarded is the chance of success at the outset of the litigation, a factor which is directly related to the number of hours risked without guarantee of success. The petitioning firms bore an equal risk that the services performed by their paraprofessionals and their attorneys would not be compensated. Consequently, at least with respect to the contingency factor, the Court sees no reason to differentiate between attorneys and paraprofessionals' time and will subject the previously-determined objective basis to a 50% multiplier for the contingent nature of success. The fees of the petitioning firms as increased to reflect the contingent nature of success are as follows:

| Petitioning Firm | Fee Adjusted for Contingency |
|---|---|
| Berger and Montague | $568,696.88 |
| Batzell, Nunn and Bode | 28,953.75 |
| Adler-Barish | 142,565.62 |
| Hepford, Zimmerman & Swartz | 5,493.75 |
| Fox-Rothschild | 171,675.00 |
| Henry P. Perciballi | 2,415.00 |
| Total | $919,800.00 |

The *Lindy* decisions also require the Court to consider whether an adjustment of an attorney's fees award should be made based upon the quality of the work performed. The quality factor in general is represented in the attorney's usual hourly rate but an additional adjustment may be made taking into consideration the result obtained by the attorneys, including monetary and non-monetary benefit to the Plaintiffs, and an evaluation of the professional methods utilized by counsel. If such an adjustment is made, the district court is required to state with specificity the factors

which support its conclusion as well as the amount by which the fee should be altered. *Lindy I* indicated that any such adjustment should reflect only an unusual degree of skill, either exceptionally good or exceptionally poor.

■ The Court has found that the work performed by the petitioning firms in these cases was of high quality. However, the Court is of the view that sufficient evidence concerning the quality of such representation has not been presented to permit the increase of the fee on the basis of extraordinarily high quality of work. With the exception of Mr. Montague, the Court had little opportunity to view any of the Plaintiffs' attorneys in court or to review any of their work on briefs or other documents submitted to the Court. The Court is substantially more familiar with the out-of-court work performed by counsel for the Plaintiffs in the related anthracite antitrust cases which have not settled because of the large number of discovery motions which have been filed in such cases. The Court agrees that the petitioning firms appear to have utilized efficient methods in reaching the settlement and have produced a substantial monetary benefit. However, the Court does not believe that it can consistently with the *Lindy* decisions make any further adjustment in the basic fee award based upon the quality of the work performed.

■ The petitioning firms have also requested reimbursement for certain out-of-pocket expenses which have been itemized in the Court's findings of fact. Those expenses, broken down by petitioning firm and dollar amount, are as follows:

| Petitioning Firm | Expenses |
|---|---|
| Berger and Montague | $31,642.72 |
| Batzell, Nunn and Bode | –0– |
| Adler-Barish | 2,186.85 |
| Hepford, Zimmerman and Swartz | 130.98 |
| Fox-Rothschild | 10,252.43 |
| Henry P. Perciballi | 40.00 |
| Total | $44,252.98 |

The Court has found those expenses to have been reasonably necessary for the conduct of this litigation and the fees charged for expenses reasonable in amount so that such expenses will be awarded.

With respect to the petition for attorney's fees and expenses, the Court reaches the following:

## IV. Conclusions of Law.

1. The hourly rates of the attorneys from the petitioning firms as set forth in this Court's findings of fact are their normal billing rates and are reasonable considering those attorneys' ages, backgrounds, experience, and the locality in which they work.

2. The hourly rates of the paralegals and law clerks employed by the petitioning firms as set forth in the findings of fact are normal billing rates for those paraprofessionals and are reasonable.

3. The number of hours expended by each of the attorneys and paraprofessionals who worked on this case were reasonably necessary to insure the success of this litigation.

4. The objective basis of the fee award, which is obtained by multiplying the number of hours reasonably necessary for the success of the litigation times the reasonable hourly rate of the attorney or paraprofessional involved, should be increased by a factor of 50% to represent the contingent nature of success of these actions.

5. No upward or downward adjustment in the fees requested should be made based upon the quality of work of the attorneys involved.

6. The amount billed for services of paraprofessionals is properly increased by a multiplier based upon the contingent nature of success.

7. The attorney's fees which should be awarded to the petitioning firms in these cases are as follows:

| Petitioning Firm | Attorney's Fees |
|---|---|
| Berger and Montague | $568,696.88 |
| Batzell, Nunn and Bode | 28,953.75 |
| Adler-Barish | 142,565.62 |
| Hepford, Zimmerman & Swartz | 5,493.75 |
| Fox-Rothschild | 171,675.00 |
| Henry P. Perciballi | 2,415.00 |
| Total | $919,800.00 |

8. The expenses incurred by the petitioning firms as set forth in this Court's findings of fact are reasonable in amount and were reasonably necessary to insure the success of this litigation.

9. The amount of expenses to which each of the petitioning firms are entitled is as follows:

| Petitioning Firm | Expenses |
|---|---|
| Berger and Montague | $31,642.72 |
| Batzell, Nunn and Bode | –0– |
| Adler-Barish | 2,186.85 |
| Hepford, Zimmerman and Swartz | 130.98 |
| Fox-Rothschild | 10,252.43 |
| Henry P. Perciballi | 40.00 |
| Total | $44,252.98 |

10. The amount of attorney's fees and costs shall be paid from the class settlement funds as follows:

10.1 61.94% by the dealer class fund.

10.2 38.06% by the industrial class fund.

An appropriate order will be entered.